In the Matter of GENERAL REINSURANCE CORPORATION, Respondent, against LOUIS H. PINK, as Superintendent of Insurance of the State of New York, Appellant.

(Argued November 18, 1935; decided January 7, 1936.)

John J. Bennett, Jr., Attorney-General (Robert N. Rose and Henry Epstein of counsel), for appellant. The legislative purpose of section 16 of the Insurance Law (Cons. Laws, ch. 28) is to control and restrict assets of insurance companies and the manner of their investment. (Manhattan Co. v. Kaldenberg, 165 N. Y. 1; 103 Park Ave. Co. v. Exchange Buffet Corp., 242 N. Y. 366.) Subdivision 12 of section 16 of the Insurance Law prohibits the acquisition by respondent of the " excess " shares and subdivision 4 has the same meaning. (People ex rel. Parker Mills v. Commissioners, 23 N. Y. 242; Trefey v. Putnam, 227 Mass. 522; Penfield v. Tower, 46 N. W. Rep. 413.) Cognizance should be taken of the mischief intended to be removed or suppressed. (Matter of Washington St. A. & P. R. R. Co., 115 N. Y. 442; Hayden v. Pierce, 144 N. Y. 512; People v. Purdy, 154 N. Y. 439.)

Hartwell Cabell, Milton B. Ignatius and James M. Lown for respondent. The provisions of subdivision 4 of section 16 of the Insurance Law relate exclusively to the investment of existing capital and surplus of insurance companies. (Morse v. Equitable Life Assur. Society, 124 App. Div. 235; People ex rel. Lemmon v. Feitner, 167 N. Y. 1; La Belle Iron Works v. United States, 256 U. S. 377; Inland Revenue Commrs. v. Gas Lighting Improvement Co., [1922] 2 K. B. 381; Person v. State Tax Commrs., 115 S. E. Rep. 336; Fidelity & Deposit Co. v. Freud, 115 Md. 29; State ex rel. Stull v. Bartley, 41 Neb. 277; State v. Gopher Tire & Rubber Co., 146 Minn. 52; Drake v. Crane, 127 Mo. 85; Una v. Dodd, 39 N. J. Eq. 173; San Diego Sav. Bank v. Barrett, 126 Cal. 413.)

CROUCH, J. The General Alliance Corporation is a domestic business corporation. The General Reinsurance Corporation is a domestic insurance corporation authorized to issue various kinds of insurance, but actually confining itself to reinsurance and excess insurance. The

North Star Insurance Company is also a domestic insurance corporation conducting a fire reinsurance business. In 1932 the General Alliance Corporation owned all the stock, except directors' qualifying shares, both of the General Reinsurance Corporation and the North Star Insurance Company. In May of that year the General Alliance Corporation transferred to the General Reinsurance Corporation as a gift 7,925 shares of the stock of the North Star Insurance Company. The purpose of the gift is stated to have been a desire to strengthen and increase the surplus of the General Reinsurance Corporation which had declined under the prevailing shrinkage in general security prices. There is here no question of the financial soundness of any of the companies referred to, nor are we concerned with the validity of the gift or the motive which prompted it.

In 1933 the transaction came to the attention of the Superintendent of Insurance as part of an examiner's routine report on the condition and affairs of the General Reinsurance Corporation. The examiner, pursuant to the usual formula, estimated the value of the North Star stock at $2,274,078.75 and determined that there was a statutory excess of insurance company stock owned by the General Reinsurance Corporation amounting to $919,184.89. Accordingly the examiner deducted that excess as an asset not admitted in the financial statement. To that portion of the examiner's report the General Reinsurance Corporation objected. A hearing was had before the Superintendent of Insurance, the objection was overruled and the examiner was sustained. Thereupon this proceeding was brought to review the Superintendent's ruling. The dispute hung upon an interpretation of subdivision 4 of section 16 of the Insurance Law (Cons. Laws, ch. 28) which provides, among other things, that " No such funds of any domestic insurance corporation shall be invested in  *  *  *  stock of any insurance corporation,  *  *  *  except  *  *  *  a stock insurance corporation, other than life,  *  *  *

may invest not more than fifty per centum of its surplus funds directly in the stocks of other insurance corporations." The petitioner contended that the statute related solely to the investment of existing capital and surplus; or, differently expressed, that it had reference solely to a situation where existing funds or assets of a corporation are to be disbursed or used to acquire another asset consisting of shares of stock in another insurance company; and, hence, that donated property in any form and of any sort could be owned and held by an insurance corporation as an asset free from the limitations on the character of investments imposed by statute.

With that contention the Appellate Division agreed, and accordingly annulled the determination of the Superintendent of Insurance.

We take the other view. The literal language quoted above, construed in the light of its statutory setting, permits, we think, no such interpretation as that contended for. Construed in the light of its obvious purpose and of its underlying policy, that interpretation becomes impossible and noxious.

Section 16 of the Insurance Law is a fairly comprehensive investment code for insurance corporations. No interpretation of a word, phrase or sentence contained in it should be made without reference to the scheme of the entire section. One notes at the outset that the section deals affirmatively with the investment of the minimum capital required by law, and then with the residue of the capital and the surplus moneys and funds. Into one or the other of these categories would seem to fall all the assets of a corporation, leaving no room for a *tertium quid* in the shape of a gift. " No such funds " — the phrase which opens subdivision 4 — refers to the preceding categories. If they are all inclusive, as we think, then the gift when given is included, and is subject both to the prohibition and to the exception of that subdivision. The gift was no less an investment because it came to the donee already invested in the form of stock. Moreover, when we come to subdivision 12, we find a repetition

of the prohibition against funds invested in the stock of another insurance company; and there the prohibition is coupled with a command directed to the corporation which *owns* such prohibited securities to dispose of them as provided. There can be little doubt about the meaning of the phrase " be invested " in subdivision 12, and there is no good reason for giving it another meaning in subdivision 4.

Going beyond the mere letter of the particular statutory provision, we find not only in the context of section 16, but in many other provisions of the Insurance Law and of cognate statutes, clear indication of the legislative intent. It is trite to say that the insurance business in its manifold forms affects the public as few others do, and hence that the financial stability of insurance companies is an element of prime importance to the public. Without referring in detail to the many scattered provisions obviously framed for purposes of safety and security, we may say broadly that almost all of them were evoked by dire experience. So when the Legislature has in substance said that the assets of insurers in an amount equal to their liabilities, their capital and at least fifty per cent of their surplus should be invested in specified types of securities, which exclude the stock of other insurers, we may be reasonably certain it did not intend that the surplus of any company should, by gift or otherwise, be built up in disregard of the limitation. It intended for competitive reasons to grant insurers an opportunity to secure business through control of other companies so far, and only so far, as might be consistent with safety and stability. In short, the intent was that all assets from whatever source derived should be subject to the provisions of section 16.

The order appealed from should be reversed and the determination of the Superintendent of Insurance confirmed, with costs in all courts.

CRANE, Ch. J., LEHMAN, O'BRIEN, HUBBS, LOUGHRAN and FINCH, JJ., concur.

Ordered accordingly.