Jack Stanislaw, J.
Petitioner moves for an order directing the Suffolk County Welfare Commissioner to issue a letter to petitioner’s employer, pursuant to section 137-a of the Social Services Law (formerly known as Social Welfare Law), to cease and desist from taking money out of his gross weekly salary under an income execution served by the Sheriff of Suffolk County. Section 137-a exempts the earnings of a recipient of public assistance or care supplementary to his income pursuant to the Social Services Law, from attachment by an income execution. Petitioner asserts his right to the letter, by reason of the fact that he is a recipient of medical assistance for the needy (“Medicaid”), under title 11 of article 5 of the Social Services Law. The proceeding is in the nature of mandamus and the application may be granted upon a showing of a clear legal right to the relief requested, provided the record leaves no scope for the exercise of a reasonable discretion (Matter of Prusan v. Valentine, 282 N. Y. 498; Matter of Solomon v. Public Serv. Comm., 286 App. Div. 636).
The chronological sequence of events which gave rise to the application is as follows: on December 26, 1966, the Chemical Bank, New York Trust Company recovered a judgment against petitioner in the amount of $2,380.91; an income execution, with respect to that judgment, was served on petitioner’s employer on September 15, 1967; on September 22, 1967, his employer commenced to withhold, income from his wages pursuant to the income execution; and a few weeks later, on November 15,1967, petitioner applied for Medicaid assistance. We note that the judgment creditor, Chemical Bank, New York Trust Company, on whose behalf the income execution was served, is not designated a party respondent, although its rights would clearly be directly affected by the outcome of this proceeding. The application, however, will be considered despite the nonjoinder. Attached to the petition is a copy of a “ Medical Service Identification ” card issued to petitioner by the Suffolk County Department of Welfare. Petitioner alleges that he is “ receiving medical assistance ” by reason of the issuance of the card, but the supporting papers are devoid of any indication that peti *133 tioner or Ms family are actually receiving medical care or treatment. The card is merely proof of eligibility for Medicaid assistance. The program is broad. It includes services performed by physicians, dentists, nurses, optometrists, podiatrists; care, treatment, maintenance and nursing services performed at hospitals, nursing homes, infirmaries and other medical institutions; out-patient hospital and clinic services; home health care and nurses ’ services; drugs, sickroom supplies, eyeglasses, dentures and prosthetic appliances; physical therapy; laboratory and X-ray services; as well as transportation necessary to obtain such care and services (Social Services Law, § 365-a, subd. 2). “ Medical assistance” under the act is defined as payment of part or all of the cost of such care, services and supplies. Such payment is usually made directly to the party performing the service.
There is no statement in the moving papers, indicating the nature of petitioner’s household, the size of his family, the extent of his property, or the amount of his income. A person may qualify for Medicaid, ‘ ‘ although not receiving nor in need of public assistance or care for his maintenance under other provisions of [the] chapter ’ ’, if he lacks sufficient income and resources “ to meet all the costs of required medical care and services available under the title ” (Social Services Law, § 366, subd. 1, par. [a], subpars. [2], [4]). In determining eligibility, the following income and resources of the applicant are not considered: a homestead; essential personal property; life insurance in the face amount of one thousand dollars or liquid resources in the amount of five hundred dollars for each person, as a burial reserve; savings in amounts equal to at least one half of the appropriate income exemptions allowed; income taxes; health insurance premiums; payments made pursuant to court order; and income in such amounts as may be established by rules of the New York State Board of Social Welfare, making allowance for the number of wage earners in a household and the number of family members in the family dependent on such income (§ 366, subd. 2, par. [a]). It is reportéd that a family of four, with a net annual income of $6,000 or less may be eligible for Medicaid. Such a family, therefore, may own a house, have bank accounts of over $3,000 plus any of the additional resources listed above and still qualify for Medicaid assistance.
Under subdivision 20 of section 2 of the Social Services Law, the term “public assistance and care” is defined to include “ medical assistance for needy persons ”. Section 137-a of the law exempts the earnings of a person from income execution *134 “while he is in receipt of public assistance or care supplementary to his income pursuant to this chapter, or while he would otherwise need such assistance or care ”. Although the latter section does not specifically direct the issuance of a letter by a public welfare official to such person’s employer, it does provide that: ‘ ‘ Any employer who shall withhold or pay over to a person presenting an income execution * * * any portion of the earnings of such a recipient * * * after receiving notification in writing from a public welfare official that the employee is receiving public assistance or care, or that he would be in need of public assistance or care if the * * * income execution * * * were enforced, shall be liable in an action by such recipient for the amount so paid or withheld The direction, therefore, for the issuance of such a letter may fairly be implied. Thus, a literal construction of the statutes relied on (Social Services Law, § 2, subd. 20; § 137-a) would appear to indicate that petitioner is entitled to the relief requested and that the language of subdivision 20 of section 2 and section 137-a is too plain to call for judicial construction. The apparent significance of language however, is not necessarily controlling. “It is always presumed, in regard to a statute, that no unjust or unreasonable result was intended by the legislature. Hence, if viewing a statute from the standpoint of the literal sense of its language, it works such a result, an obscurity of meaning exists, calling for a judicial construction ’ ’ (Matter of Meyer, 209 N. Y. 386, 389). The question to be decided on this application, therefore, is whether the Legislature intended that section 137-a shall apply to all persons who are eligible for assistance under the Medicaid program. The answer is neither specifically defined by the act (Social Services Law, art. 5, tit. 11) nor established by case law.
Respondent Suffolk County Department of Social Services opposes the application on the ground it has been advised by the Department of Social Services of the State of New York (the agency responsible for the administration of Medicaid) that section 137-a does not apply to recipients of Medicaid who receive no other form of public assistance. More specifically, the New York State Board of Social Welfare has sent written notification to all local welfare commissioners of its policy not to apply section 137-a “ to persons whose medical expenses are paid under the medical assistance for needy persons program if they are not also in receipt of cash grants under a public assistance program ”. Respondent advises that approximately 40% of the State’s population are eligible for Medicaid assistance; thus, failure to abide by the policy aforesaid, would, in effect, *135 exempt 40% of the State’s population from the rights afforded by law to judgment creditors. Respondent advises that the extension of section 137-a to recipients of Medicaid could lead to “ insurmountable problems of administration ” within its own agency and further contends that, in enacting the Medicaid program, the Legislature did not intend to disturb creditors’ rights with respect to so large a percentage of the State’s population.
The Medicaid program (Social Services Law, art. 5, tit. 11 [§§ 363-369]) became effective in 1966. During the same year, subdivision 20 of section 2 (which defines “public assistance and care ”) was modified to include the term “medical assistance for needy persons ” (indicating a clear reference to title 11). But section 137-a has not been modified since 1964, two years prior to the enactment of title 11. Thus, there is no specific indication that section 137-a was intended to apply to all persons eligible for Medicaid assistance.
The New York State Board of Social Welfare, in its statement of policy, which negates such intention, distinguishes the intent of the term “ in receipt of ”, as used in section 137-a, from “ in receipt of medical assistance ”, as applied to persons whose medical expenses are paid under the Medicaid program. Petitioner, on the other hand, argues that ‘ ‘ public assistance and care ” has been specifically defined to include “ medical assistance for needy persons ” (§ 2, subd. 20) and section 137-a specifically refers to persons “ in receipt of public assistance or care
Where, however, one section of an act must be relied on to construe the intent of another, neither semantics nor literal interpretation of words and phrases are controlling. Sections of an act must be construed in view of all of the provisions of the act as well as the general purpose and manifest policy intended by the Legislature in its enactment (Matter of Davison, 137 Misc. 852, affd. 236 App. Div. 684). Literal meanings of words in a statute must not be adhered to or suffered to defeat such purpose and intent (People v. Ryan, 274 N. Y. 149; Surace v. Danna, 248 N. Y. 18). Courts must look to the history and object of the enactment and “ read the statute in the light of the state of facts which were found by the Legislature, and which prompted the enactment ” (St. Nicholas Cathedral v. Kedroff, 302 N. Y. 1, 31). Interpretation of words, sentences and phrases, contained in a statute, must not be made without reference to the scheme of the whole (Matter of General Reinsurance Corp. v. Pink, 269 N. Y. 347). Statutory construction cannot be determined in all cases by any fixed and absolute rule. *136 The duty of the court is to give effect to the legislative intent rather than the literal terms of the enactment (Bank of Metropolis v. Faber, 150 N. Y. 200; Matter of Schacht v. Allen, 20 A D 2d 507). Literal construction should be rejected if it does not reflect the Legislature’s intent, as indicated by the general purpose and history of the legislation, read as a whole, not word by word. (People ex rel. Makin v. Wilkins, 22 A D 2d 497; Matter of Village of Gowanda v. County of Erie, 25 A D 2d 18, affd. 19 N Y 2d 735.)
It is the settled rule of statutory construction that where there is any doubt as to the proper interpretation of a statute, it should receive that which would not work an injustice or lead to unreasonable and absurd consequences. (East v. Brooklyn Heights R. R. Co., 195 N. Y. 409; People v. Ryan, 274 N. Y. 149; Surace v. Hanna, 248 N. Y. 18; Seltzer v. City of Yonkers, 286 App. Div. 557, affd. 1 N Y 2d 782.) “ Where a particular application of a statute in accordance with its apparent intention will occasion great inconvenience or produce inequality or injustice, another and more reasonable interpretation is to be sought.” (Matter of Meyer, 209 N. Y, 386, 389; Matter of Insurance Co. of North America v. Senior, 27 A D 2d 24).
Although not necessarily binding on the court, the practical construction of a statute adopted by the officer or administrative agency responsible for its implementation is usually entitled to great weight and always an element to be considered (Ferraiolo v. O’Dwyer, 302 N. Y. 371). The practical interpretation of the statutes here involved, as advanced by respondent (the agency responsible for the enforcement of the subject legislation) appears reasonable and cannot be ignored (Household Finance Corp. v. Goldring, 263 App. Div. 524, affd. 289 N. Y. 574). Moreover, it appears in harmony with the legislative intent of the enactment. The stated purpose of the Medicaid program is to ‘ ‘ assure a uniform high standard of medical assistance throughout the state ” (Social Services Law, § 363). Its benefits are available not only to the poverty stricken but, by application, to 40% of the State’s population. The program is devised to afford a high standard of medical care for the total community. But it is doubtful that the Legislature also intended to thereby insulate so large a percentage of our population from liability for payment of judgments.
Although an order in the nature of mandamus is classed as a legal remedy, equitable principles largely control its issuance and the burden of demonstrating the necessity and the propriety of its use rests with the petitioner (Matter of Coombs v. Edwards, 280 N. Y. 361). But even in cases where a clear legal *137 right is shown, the court must decide whether in the exercise of sound discretion it will grant or withhold relief (Matter of Durr v. Paragon Trading Corp., 270 N. Y. 464; Matter of Cromarty v. Leonard, 13 A D 2d 274). The court must consider the surrounding circumstances and, if granting the application is likely to produce inequitable consequences, it should be denied. (Matter of Frazier-Davis Constr. Co. v. Gerosa, 6 A D 2d 112.) Consideration must be given not only to the conduct of the petitioner or the hardship or injustice to respondent but also the interest of third persons, who may not be designated parties to the proceeding (Matter of Coombs v. Edwards, 280 N. Y. 361, 364, supra).
Mandamus is an extraordinary remedy and the courts, in the exercise of judicial discretion, will be reluctant to issue such a writ if it will cause disorder and confusion in public affairs, even though a strict legal right to the relief requested has been shown (Matter of Warehousemen’s Assn. v. Cosgrove, 241 N. Y. 580; Matter of Smidt v. McKee, 262 N. Y. 373; Matter of Andresen v. Rice, 277 N. Y. 271, 282; Matter of Ahern v. Board of Supervisors of Suffolk County, 7 A D 2d 538).
In view of the stated policy enunciated by the agency responsible for the administration of the Medicaid program and guided by the warning of disorder which may otherwise develop, affecting not only the internal administrative procedures of the agency but, more particularly, with respect to the disruption of creditors’ rights in a society that has encouraged and thrived on a liberal credit policy, extended to all classes of our economic community, we are constrained to deny the application. Construing section 137-a in accordance with the practical interpretation adopted by the New York State Board of Social Welfare and the apparent intent of the Legislature in providing a liberal Medicaid program, we hold that, absent the enactment of a clear mandate to the contrary, a person is not automatically entitled to a letter from the local welfare commissioner directing his employer to exempt his salary from a valid income execution, merely because such person has applied for and received a card indicating his eligibility for assistance under the Medicaid program.
Accordingly, the petition is dismissed, without prejudice, however, to the commencement of a proceeding for a modification of the income execution, under CPLR 5231, subd. [g], based upon proof of conditions indicating that its imposition is unreasonable or unduly burdensome.