Harold L. Wood, J.
By summons and verified complaint, plaintiff sets forth two causes of action against defendants. In its first cause of' action, plaintiff asserts that a certain complex of stores, built by AYR Realty Corporation (AYR) on property in the City of Yonkers (Yonkers) leased by AYR on a long-term 50-year lease from the Central Arcade Corporation, constitutes a “designed shopping center ” as delineated in section 107-19 of the Yonkers Zoning Ordinance (General Ordinance 24-1968), for which the ordinance mandates the procurement of a special exception use permit (BETJP) and that such SETJP was not obtained by AYR prior to the commencement of building of any of the stores in the complex.
The second cause of action alleges that the defendant, Waldbaum’s Supermarket Corp. (correct denomination, Waldbaum’s 101, Inc.) obtained a SETJP from the Yonkers Zoning Board of Appeals subject to certain stated conditions which were not complied with; that these conditions were improperly modified by the Yonkers Common Council so as to justify the issuance to Waldbaum’s of a temporary certificate of occupancy.
Plaintiff seeks injunctive relief restraining the defendants from operating what plaintiff calls the presently existing “ designed shopping center ” and, particularly, the operation of Waldbaum’s.
By order to show cause dated October 23, 1974 plaintiff seeks an order, pendente lite: (1) enjoining Yonkers from “maintaining in force and effect a temporary Certificate of Occupancy for [the premises herein involved] heretofore issued to AYR * * * and from issuing a permanent Certificate of Occupancy to AYR; and (2) enjoining defendants AYR * * * and Waldbaum’s * * * from occupying, using, and/or permitting the occupancy and use of the premises * * * for any purpose; and (3) enjoining further construction or modification [thereat]. ”
By notices of motion dated November 15, 1974 and November 20, 1974, the defendants herein each cross-move for orders pursuant to CPLR 3211 (subd. [a], par. 7) dismissing the complaint herein for failure to state facts sufficient to constitute a cause of action.
Plaintiff is a copartnership which owns a residential apartment complex housing more than 300 families to the north and west of the AYR property. Access to plaintiff’s property from Central Park Avenue is by means of Balint Drive which starts *588 at Central Park Avenue and runs westerly dead ending in a turnabout.
During October, 1972 AVR applied to Yonkers for a building permit and, in connection therewith, submitted plans showing a proposed supermarket and a number of retail stores. On November 29, 1972, Yonkers duly issued a building permit to “construct retail ¡stores as per plans filed. ”
The AVR property is located in a zoning district denominated BR on the Yonkers official zoning map. It is one of the stated purposes of BR zoning ‘ ‘ To encourage the present tendency of retail stores to group together in integrated centers ” (Zoning Ordinance, § 107-3 [H] [3]).
The Yonkers zoning ordinance also contains a section (§ 107-19) which defines the types of business uses which are permitted in various zones and those which, though not permitted, are allowed through the obtaining of a SEUP. Among those uses specified as requiring a ¡SEUP is a “ designed shopping center ” and also a “ retail store not otherwise classified.”
It is plaintiff’s contention that the proposed AVR complex of stores was a “ designed shopping center ” and thus, prior to the issuance of any building permit, it was incumbent upon Yonkers to require and upon AVR. to apply for and obtain a SEUP for the entire complex, which, concededly, was not done. Unfortunately, the term “ designed shopping center ” is nowhere defined in the Yonkers zoning ordinance. However, it is Yonkers’ contention that the term was placed in the ordinance to éncompass “developments in the nature of the Cross County Shopping Center or the Taubman proposal for the Boyce Thompson Institute site in the City of Yonkers ” and does not apply to a complex of stores such as here involved. It is further alleged by Mr. Pistone that complexes similar to that here proposed have, in the past, been permitted by Yonkers without the requirement of a SEUP. The rationale behind this particular section is set forth by Mr. Pistone, in his affidavit and who, parenthetically, is and has been Planning Director of Yonkers for the past 17 years.
“ The rationale in the Zoning Code was to enable the City (of Yonkers) to more closely control developments of the nature of Waldbaum’s. That is, that when a special exception use for a ‘ designed shopping center ’ is obtained, any use which is permitted in a BR Zone may be put on such a site. By not requiring a special exception use for a development of the nature of Waldbaum’s the City can force each individual use put into *589 such a development to obtain a special exception where necessary. As can be seen by the pleadings, this actually occurred when Waldbaum’s applied for and obtained a special exception permit for its supermarket.”
This rationale appears to this court to be both rational and reasonable and, thus, pursuant to McKinney’s Consolidated Laws of New York (Book 1, Statutes, § 129), is accepted by this court, being entitled, under the cases and the statute to great weight and consideration. (Matter of Izzo v. Kirby, 56 Misc 2d 131; Bright Homes v. Wright, 10 A D 2d 355, revd. on other grounds, 8 N Y 2d 157; Matter of Cohen v. State Liq. Auth., 52 Misc 2d 111.)
This court holds, therefore, that the AYR proposed complex of stores was not a “ designed shopping center ” under the ordinance and, accordingly, no SEUP was initially required prior to the issuance by Yonkers of the building permit of November 29, 1972.
Shortly after. November 29, 1972, AYR proceeded with the physical development of the site. A construction trailer was located thereon and the building permit of November 29, 1972 was posted conspicuously on the site, as required. The construction work proceeded in an orderly manner from early January, 1973 throughout 1973. The three buildings of the AYR complex are almost directly in front of plaintiff’s premises and, as construction proceeded, the extent and nature thereof were obviously apparent to plaintiff. Additionally, in July, 1973, Waldbaum’s signed a lease with AYR for the supermarket portion of the complex and, as early as October, 1973 (according to AYR [Cotroneo affidavit]), or December, 1973 (according to Waldbaum’s affidavit), a sign, approximately 5 feet by 7 feet was erected by the rental agent at the corner of Central Park Avenue and Balint Drive stating that Waldbaum’s was to occupy one of the stores of the complex.
In the fall of 1973, Yonkers decided that since a supermarket was not specifically delineated in its table of uses under section 107-19 of the Zoning Ordinance, such a supermarket fell within the there included designation of a “ retail store not otherwise classified ’ ’ '¡for which, pursuant to that ordinance a SEUP was required for Waldbaum’s alone. Although this determination by Yonkers was challenged by AYR based, principally, on Yonkers’ noninsistence on such procedure, in other claimed similar circumstances, it was ultimately held (by Yonkers that a SEUP for Waldbaum’s would be a necessary prerequisite.
*590 Accordingly, on May 21, 1974, AVR formally applied for a SEUP and, though initially denied by the Yonkers Zoning Board of Appeals (ZBA), it was, on reconsideration by the ZBA, granted on May 30, 1974, subject, however, to the performance by AVR of certain stated conditions, all of which were related to the construction and maintenance by AVR of an exit road from the complex to Balint Drive. As statutorily required, the conditional approval of the ZBA was adopted by the Yonkers City Council (Resolution No. 266-4974) on June 11, 1974. Pursuant to the Yonkers Zoning Ordinance, plaintiff, as a property owner within 200 feet of the premises for which a SEUP was sought, was duly notified of the application therefor. It is plaintiff’s contention (as set forth in the affidavit of its counsel [Belkin affidavit of October 22,1974]) that it was not until notice of this application for a SEUP was received by it, was it made aware ‘ ‘ for the first time exactly what was happening and what was contemplated for the property adjacent to plaintiff’s property”.
Since this exit road involved a co-ordination with Central Park Avenue, a New York State roadway, approval thereof was necessary from the State Department of Transportation. Unfortunately such approval not only could not be obtained but the proposed exit road as set forth in the ZBA (and City Council) approval of the SEUP was expressly rejected by the State Department of Transportation by letter dated August 27, 1974.
Time then being of the essence, vis-á-vis construction and impending occupancy by the tenants of AVR, the latter, by letter dated August 21, 1974, in essence, agreed, with Yonkers to construct any type of exit road to Balint Drive as met with the approval of both Yonkers and the State Department of Transportation. As the result, no doubt, of negotiations between these agencies, the conditions imposed by the ZBA on May 30, 1974 and adopted by the City Council by its resolution No. 266-74 on June 11,1974, were modified.
This modification, however, was encompassed solely within the City Council’s resolution No. 380-74, dated October 8, 1974. In other words, this modification was not resubmitted first to the ZBA for its approval and, if approved, sent to the City Council for its adoption. It is plaintiff’s contention that the failure to first permit the ZBA to pass upon the modified conditions renders fatally defective the City Council’s unilateral modification of the conditions by way of its resolution No. 380-74 of October 8,1974.
*591 It is undisputed that AYR has embarked upon the building of the exit road to Balint Drive in accordance with the modifications set forth in City Council resolution No. 380 — 74.
By section 107-72 of-the Yonkers Zoning Ordinance, dealing with special exception uses, the ZBA has been delegated by the Yonkers legislative authority, the City Council, 11 original jurisdiction and power * * * to grant a permit for the location of a special exception use in a particular district for which application is made. Such permit shall not be valid or take effect until the Board of Appeals shall have remitted to the Common Council a transcript of the hearing and a copy of its findings and decision and the issuance of the permit shall have been approved by a resolution of the Common Council.”
It is apparent from the foregoing that, although delegated, the ultimate power to approve SEUP’s rests with the Yonkers City Council. To say, as plaintiff does, that the latter could not initially impose conditions upon the issuance of a SEUP without first submitting the same to the ZBA, would be to lose sight completely of the compelling difference between the ZBA and the City Council. The latter, as Yonkers’ legislative authority, has powers far in excess of those of the ZBA, which is limited to specifics invested by virtue of City Council delegation. Concededly, the City Council could disapprove a SEUP approval by ZBA. It is evident, therefore, that the City Council can initially modify any conditions imposed by the ZBA without the ritualistic necessity of first seeking ZBA approval of the modifications. The only requirement where the City Council so acts is that it act in a reasonable manner and nowhere has it been suggested that the modifications proposed by the Council hy resolution No. 380-74 of October 8, 1974 relative to the exit road to Balint Drive were unreasonable. (See Matter of Tape Vee Corp. v. Town Bd. of Town of Hempstead, 30 A D 2d 702; Matter of Belclaire Holding Corp. v. Klingher, 28 A D 2d 689; Matter of Peckham Ind. v. Ross, 60 Misc 2d 566, affd. 34 A D 2d 826.)
Accordingly, this court finds that the modifications set forth in council resolution No. 380-74 were legally adopted and are being complied with by AYR. (Matter of Alex-Wells v. City of Yonkers, 154 N. Y. S. 2d 108; Designer Homes v. City Council of City of Yonkers, 36 A D 2d 836; Matter of Stine v. Kirvin, 17 A D 2d 716.)
Plaintiff is seeking injunctive relief against defendant to the end that the present AYR complex, occupied by Waldbaum’s and 10 'other retail stores, all presently doing business, are *592 ousted from their premises and prevented from carrying on their respective enterprises.
As stated above, the construction of this complex was commenced in November, 1972, proceeded throughout 1973 and 1974 up to and until the occupancy of the several stores by tenants and the commencement of business. All this was done under the very nose of plaintiff whose property overlooks this site. Additionally, and as also stated above, a large sign announcing Waldbaum’s tenancy and the availability of other stores in the complex was posted on the AVR property, at its junction with Balint Drive, leading to plaintiff’s premises, since either October or December, 1973. It has been set forth, without contradiction that the cost of the complex improvement, excluding the cost of the land, approximates $1,800,000. The opening expenses of Waldbaum’s alone came to almost a million dollars and it further alleges that, if forced to close, its weekly losses would total over $34,000. May such tremendous consequences follow when plaintiff stood by and watched this construction for almost two years after its initiation? This court feels that plaintiff is guilty of laches under the circumstances.
“ An action to enjoin a violation of a zoning ordinance is an equitable remedy and is subject to the defenses .commonly available in such proceedings. The respondent may, for example, urge that the right of the petitioner was lost due to laches. A person may not maintain an action to enjoin construction if he fails to assert his right in a timely manner, or to require the removal of a building which violates the zoning regulations if he remains silent with knowledge that it is under construction. ” (2 Anderson, New York Zoning Law and Practice [2d ed.], § 23.08; Ufier v. Baldwin, 33 Misc, 2d 848; University Gardens Prop. Owners Assn. v. Schultz, 272 App. Div. 949; Syracuse Supply Co. v. Railway Express Agency, 45 Misc 2d 1000.)
For the reasons expressed above, the application for injunctive relief is denied and the respective cross motions to dismiss for failure to state facts sufficient to constitute a cause of action are granted. The court does not reach the other basis for the cross motions advanced in defendants’ moving papers and memoranda of law.