■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JAE HO DUGAN, Respondent. [634 NYS2d 820] —Yesawich Jr., J. Appeals from an order and a supplemental order of the County Court of Cortland County (Mullen, J.), entered November 18,

1994 and December 1, 1994, which granted defendant's motion to suppress evidence and dismissed the indictment.

At 11:30 P.M. on Sunday, March 27, 1994, two officers of the Cortland County Sheriff's Department saw defendant exit a commercial/residential building on a then mostly deserted main street in the City of Cortland, and join two other people, a male driver and a female passenger, in a car that was parked nearby. Noticing that the car had temporary, out-of-State license plates and believing that defendant was not "up to any good", the officers approached in their vehicle and attempted to determine whether the plates were current. Unable to read the expiration date written thereon, they circled the block while seeking more information by radio; none was forthcoming, as the registration in question was not on file. When the officers returned, the car was still there and they approached to ask the driver for identification and registration papers. Defendant was seated in the front passenger seat, the woman in the rear. When the driver opened the glove compartment to get the requested documentation, a quantity of $20 bills fell out. Asked to explain the large amount of cash and several boxes apparently containing new stereo equipment in the rear of the car, the driver stated that he was on leave from the Navy—having just returned from sea duty—and had cashed his accumulated paychecks, and purchased the equipment at a nearby Air Force base. He was unable, at that time, to produce receipts or paycheck stubs to substantiate these claims. However, the automobile documentation he had turned over was complete and in order, and fully corroborated his statement that he had recently purchased the car in Virginia.

The officers then asked the driver to step out of the car, and Officer Todd Caufield questioned him separately about his reason for being on the street at that time. He replied that defendant had been looking, unsuccessfully, for someone to buy beer for the three of them, all of whom were underage. Caufield asked for, and received, the driver's permission to search the car, and radioed for assistance from Russell Phelps, an officer with the department's K-9 unit.

When Phelps arrived with his trained dog, defendant and the female passenger were directed to exit the car so that it could be searched. Defendant asked if he could go home, indicating that he lived across the street, but was told that he could not. He was then informed that the dog would be used to search the car and that if he was carrying anything illegal, "it

would be a lot easier" to turn it over, as the dog might "alert" if it detected an illegal substance.* At that point, defendant admitted that he had a "baggie" of cocaine, which Caufield then retrieved from his front pants pocket. Defendant was placed under arrest, and was eventually charged with criminal possession of a controlled substance in the third degree and criminal possession of a controlled substance in the fifth degree. No other contraband was found in the car or on the person of either of the two other occupants.

Defendant moved to suppress the statements he made at the scene and later, as well as the evidence seized from his person, and to dismiss the indictment. After a hearing, County Court found that the evidence in question was obtained as a result of an unlawful detention and granted defendant's motion. The People appeal.

We affirm. Even if the initial request for information from the driver of the vehicle was proper, and not, as defendant contends, merely a pretext for further investigation based on Caufield's "hunch" that defendant was involved in criminal activity (*but see, People v Vasquez*, 173 AD2d 580, 581-582, *lv denied* 78 NY2d 1130; *People v Watson*, 157 AD2d 476, 477, *lv dismissed* 75 NY2d 971; *People v Llopis*, 125 AD2d 416, 417), the officers' subsequent detention of defendant, whether they actually intended to search his person or not, was illegal (*see, People v Banks*, 85 NY2d 558, 562, *cert denied* — US —, 116 S Ct 187). Police officers may not forcibly detain a person without a reasonable suspicion, based on articulable facts, that he or she "is involved in criminal acts or poses some danger to the officers" (*People v Harrison*, 57 NY2d 470, 476; *cf., People v May*, 81 NY2d 725, 727-728; *People v Martinez*, 80 NY2d 444, 447-448). Defendant was plainly detained against his will when he was directed out of the car and onto the sidewalk, expressly informed that he was not free to go and warned about the dog's aggressive proclivities, which implied that defendant was to be the subject of a potentially dangerous search (*compare, People v Carrasquillo*, 54 NY2d 248, 252-253). At that point, no reasonable person would have believed that he or she was free to go, or to refuse to be searched.

Moreover, County Court's finding that this detention was effected on the basis of nothing more than unfounded suspicion

---

* Phelps testified that when the dog "alerts" he begins scratching very vigorously, "digging" aggressively to get at the drug he has detected, and that he believed that defendant understood the meaning of the term.

is amply supported by the testimony adduced at the suppression hearing. Caufield's testimony demonstrates that he became "suspicious" of defendant as soon as the latter emerged from the building, but that he had no legitimate factual reason for believing that any crime had been committed, or that defendant had actually participated in any illegal activity, at that time.

Although the People claim that the officers' activities became appropriately more intrusive as they became aware of additional suspicious facts (*see, People v Hollman*, 79 NY2d 181, 185; *People v De Bour*, 40 NY2d 210, 223), such as the large amount of cash and equipment in the car, those items provide no basis for further misgivings with respect to defendant, as the driver claimed sole ownership of them and explained their presence. Notably, the officers had not been informed of any recent criminal activity in the area, such as a burglary or drug transactions, in which the three might have participated jointly, or of anything that would substantiate their belief that defendant himself had been involved in such pursuits (*see, People v Colwell*, 96 AD2d 649, 650).

Nor did any of the officers recount anything about defendant's demeanor or behavior that might have led them to conclude that he was armed or dangerous. While they portrayed the neighborhood as a "high crime" area, this description was premised on a few events that had occurred in some of the residential apartments of the building from which defendant emerged (*compare, People v Martinez, supra*, at 446), and is not enough, under the circumstances, to justify the level of police intrusion utilized.

There having been no reason to believe that defendant himself had been involved in any criminal activity, the officers had no right to detain him while they searched the vehicle, or to search (or threaten to search) his person (*see also, People v Hoffman*, 135 AD2d 299).

Cardona, P. J., Mikoll, Casey and Peters, JJ., concur. Ordered that the order and supplemental order are affirmed.