*50 OPINION OF THE COURT
Donald J. Mark, J.
This is an application by the defendant, who is charged with two counts of criminal possession of a weapon in the third degree and one count of criminal possession of stolen property in the fourth degree, pursuant to CPL 710.20 (1), to suppress a semi-automatic pistol seized from his vehicle, upon the ground that the weapon was seized in violation of his constitutional rights.
The following evidence was adduced at the pretrial hearing on this issue:
On September 6, 1996, the police possessed information that a tan Toyota Land Cruiser was suspected of involvement in home invasion robberies by armed perpetrators; at 2:30 a.m. Sergeant Michael Giaconia observed a vehicle that matched that description, and he followed that vehicle until it stopped of its own volition without his engaging his emergency equipment; the defendant, who was the driver, produced his operator’s license in response to the Sergeant’s request, but the two other occupants, although identifying themselves, lacked identification; the Sergeant was satisfied from the responses to his inquiry that the vehicle’s occupants were not involved in the robberies under investigation; at the time of the initial stop, the Sergeant shined his flashlight into the defendant’s vehicle and observed nothing unusual.
Another officer arrived and all the occupants were directed to exit the vehicle; as the defendant was exiting the vehicle, the Sergeant asked him if there were any drugs or weapons in the vehicle, and the defendant answered in the negative; the Sergeant asked the same question three more times and received the same answer; the Sergeant then asked the defendant if he minded if the Sergeant looked into the vehicle, and the defendant responded, "O.K.”; the Sergeant shined his flashlight into the vehicle and observed the butt of a handgun, which he thereafter determined was loaded; and the handgun was seized, and the defendant was arrested.
This factual predicate involves three legal concepts, viz.: (1) the approach of the defendant’s vehicle which had stopped without any police intervention; (2) the defendant’s consent to search his vehicle, and the "search” by means of the Sergeant’s flashlight; and (3) the observation of the handgun by the Sergeant after the occupants had been ordered to exit the vehicle.
*51 These concepts in turn are dependent upon the four-tiered analysis formulated by the Court of Appeals in People v De Bour (40 NY2d 210) and its progeny, by which the propriety of police-citizen encounters are to be evaluated. Only the first three levels are implicated here, i.e., the first level — a police officer may approach an individual to request information where there is an objective credible reason although not necessarily indicative of criminal activity; the second level — a police officer may interfere with an individual to the extent necessary to gain explanatory information, but short of a forcible seizure, where there is a founded suspicion of criminal activity; and the third level — a police officer may lawfully stop and detain an individual where there is a reasonable suspicion that the individual is involved in criminal activity.
As to the first concept, Sergeant Giaconia did not effect the stop of a moving vehicle, which would have required a showing of the third level of People v De Bour (supra), viz., reasonable suspicion, which was absent here (People v Spencer, 84 NY2d 749, cert denied 516 US 905). There was no prohibition against the Sergeant approaching the parked vehicle to request information under level one of De Bour (supra; People v Harrison, 57 NY2d 470), because the fact that the defendant’s vehicle matched the description of the vehicle suspected of involvement in the armed home invasion robberies provided an objective credible reason (see, People v Flanagan, 224 AD2d 633, lv denied 88 NY2d 878).
Thus, the approach of the defendant’s vehicle to request information was legally permissible under the circumstances of this case.
As to the second concept, a police officer is not permitted to request a consent to search from a suspect, unless he has a founded suspicion that the defendant is engaging in criminal activity, and any such consent, even if freely given, is deemed involuntary as a matter of law (People v Hollman, 79 NY2d 181).[1] Here, there was no founded suspicion of criminal activity, as the defendant identified himself by producing his operator’s license and the two occupants identified themselves, so the Sergeant was satisfied that they were not connected to the robberies under investigation (see, People v Turriago, 219 AD2d 383, lv granted 88 NY2d 971).
However, the use of the flashlight by Sergeant Giaconia to illuminate the interior of the defendant’s vehicle which *52 resulted, in the discovery of the handgun did not constitute a search (People v Vasquez, 229 AD2d 997, lv denied 88 NY2d 1025; People v Pratt, 207 AD2d 671, lv denied 84 NY2d 1014; People v Wiesmore, 204 AD2d 1003, lv denied 84 NY2d 873).
Thus, despite the invalidity of the defendant’s consent to search his vehicle, no search, as contemplated by the law, was conducted here.
As to the third concept, the validity of the seizure of the handgun depends upon compliance with the three conditions of the "plain view” doctrine as promulgated by the United States Supreme- Court in Coolidge v New Hampshire (403 US 443) and adopted by the Court of Appeals in People v Spinelli (35 NY2d 77). These conditions are as follows: (1) the officer is lawfully in a position to observe the item; (2) the observation is inadvertent rather than anticipated; and (3) the incriminating character of the item is immediately apparent (People v Basilicato, 64 NY2d 103).
Only the first condition need be considered in this case, bec.ause if the Sergeant was not lawfully in a position to observe the handgun in the defendant’s vehicle, the seizure of the weapon was not constitutionally proper. Since the occupants of the vehicle were directed to exit by the Sergeant, and the handgun was observed during this time frame, the legitimacy of this direction must be determined.
The United States Supreme Court in Pennsylvania v Mimms (434 US 106) announced the rule that the driver of a motor vehicle who has been lawfully stopped for a traffic offense could be ordered out of that vehicle by the police officer; the Court of Appeals followed the pronouncement in People v Landy (59 NY2d 369). The Court of Appeals in People v Robinson (74 NY2d 773) thereafter decided that the same rule applied to the passengers in the stopped vehicle.[2]
As there was no traffic stop involved here, and actually not even a stop, the novel question to be answered is whether the driver and passengers could be ordered to exit the parked vehicle in a level one encounter pursuant to People v De Bour (supra), i.e., a request for information based upon an articulable reason.
The answer is found in People v Harrison (57 NY2d 470, supra) from both its language in regard to traffic stops and its reference to the level of People v De Bour (supra) necessary for the police to effect control of the person of an individual.
*53 The language of the Court of Appeals in that decision which is relied upon (supra, at 477) is as follows: "The key fact in the Mimms decision is that the driver had been lawfully stopped for a traffic offense * * * The court concluded that out of a concern for his own safety the police officer could order the driver out of the vehicle * * * The court did not hold that the police could take similar action when * * * the driver had not been lawfully stopped for a violation of the law. Indeed the court expressly noted (at p 111, n 6) that we do not hold today that "whenever an officer has an occasion to speak with the driver of a vehicle, he may also order the driver out of the car” ’”.
The facts in People v Harrison (supra) are somewhat similar to the facts in this case. There, when the defendant’s vehicle stopped, two police officers approached it solely because it was a dirty rental car; when the defendant attempted to exit the vehicle, the officers ordered him to remain inside; one officer ascertained that the vehicle was not stolen but learned from his notes that the occupants and the vehicle roughly matched the description of the individuals and the vehicle suspected of involvement in an armed robbery; and the officer pointed his flashlight into the vehicle and observed a .22 caliber revolver.
The Court of Appeals held that the police possessed an articulable basis to approach the parked vehicle because of its dirty condition; that confining the occupants to the vehicle was a limited seizure of the person; that a reasonable suspicion that the occupants were involved in criminal activity was required to justify the police order; and the fact that the defendants occupied a dirty rental car was insufficient to establish such a reasonable suspicion.
The ordering of the occupants out of the vehicle in this case would seem to likewise constitute a limited seizure of their persons.
Therefore, because there was no traffic violation,[3] and because there was no reasonable suspicion of criminal activity, Sergeant Giaconia lacked the authority to order the defendant *54 and his passengers out of the defendant’s vehicle. As a result, he was not lawfully in the position to observe the handgun, the first requirement of the "plain view” doctrine, so the seizure of the handgun cannot be justified under that theory and must be suppressed.[4]

. A contrary rule was established by the United States Supreme Court in Ohio v Robinette (519 US —, 117 S Ct 417).

. The United States Supreme Court decided likewise in Maryland v Wilson (519 US —, 117 S Ct 882).

. After a traffic stop a police officer must engage in the writing and issuance of uniform traffic tickets, and for his safety during this period he can order the occupants to exit the stopped vehicle (People v Landy, 59 NY2d 369, supra; People v Robinson, 74 NY2d 773, supra); here, where Sergeant Giaconia was satisfied with the information he received from the vehicle’s occupants, there was no further action he could take (see, People v Banks, 85 NY2d 558, cert denied 516 US 868; People v Harrison, 57 NY2d 470, supra).

. Had Sergeant Giaconia observed the handgun the first time he pointed the flashlight into the defendant’s vehicle, the result obviously would have been different.