■ THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v JADE FELLOWS, Respondent. [657 NYS2d 624] —Order, Supreme Court, Bronx County (Phylis Skloot Bamberger, J.), entered on or about November 27, 1995, which granted defendant's motion to suppress physical evidence, unanimously reversed, on the law, and the motion denied.

The defendant was indicted for two counts of criminal possession of a weapon in the third degree and one count of criminal possession of a weapon in the fourth degree. In response to his motion to suppress physical evidence, a hearing was held at which Police Officer Timothy Keneally testified that at 3:35 A.M. on July 12, 1995, he and his partner were driving a marked patrol car on Duncan Avenue in the Bronx when they saw the defendant riding a green bicycle slowly down the street while peering into parked cars. The officer stated that the area is residential and is known to be a frequent target for auto theft and thefts of items from cars.

The uniformed officers continued to watch the defendant and watched as, apparently in response to seeing their patrol car, he bicycled onto the sidewalk. Even while on the sidewalk, he continued looking into the parked cars as he pedaled by. Keneally added that the defendant was wearing a heavy black coat,

which he found "peculiar" since it was a hot night in the middle of July.

The officers drove up next to the defendant, who was still on the sidewalk, and stopped their car. As Keneally's partner left the car, he said, "Hi, how you doing?" to the defendant, who stopped his bicycle. Keneally then left the car and approached the defendant from behind. Neither officer had his weapon drawn, and neither ordered the defendant to stop. However, Keneally stated that as they approached him, the defendant appeared to become nervous. He also stated that neither he nor his partner had the chance to ask the defendant any questions because, as Keneally's partner got closer to him, the defendant, who was standing over his bicycle with his hands on the handlebars, drew the bicycle from between his legs and threw it in the direction of the officer's legs, knocking him down. The defendant then fled while holding the side of his coat. Keneally chased after him and, as the defendant turned the corner from Magenta Street onto Colden Avenue, Keneally saw him throw a black object over a fence into a private residence.

Keneally finally caught up with the defendant on Magenta Street and placed him under arrest. He thereafter recovered a black .380 caliber semiautomatic handgun from the yard of the house where he had seen the defendant throw the black object.

At the conclusion of the hearing, the Supreme Court granted the defendant's motion to suppress the gun since it found that, although the police had a right to request information from the defendant, they did not have a founded suspicion that criminal activity was afoot, and, therefore, the defendant had the right to refuse to respond to any questioning and to leave the scene. The court further found that the incident with the bicycle did not require a different result since, "[w]hile the testimony was that the defendant threw the bike that he had been riding, there [was] no testimony that he threw it at [Keneally's partner] or that his conduct demonstrated an intent to hurt him. Rather, pulling the bike from between his legs and tossing it away from himself appears to be the way that the defendant could get rid of the bike as he ran away. Therefore, there was no independent basis for taking the defendant into custody".

The level of permissible intrusion by the police during street encounters with private citizens is governed by the four-tier analysis as set forth in *People v De Bour* (40 NY2d 210, 223), and reaffirmed in *People v Hollman* (79 NY2d 181). This analy-

sis examines the information available to the police at the time of the encounter, ranging from an objective, credible reason, which warrants an approach for the purpose of requesting information, to "a founded suspicion that criminal activity is afoot" *(supra,* at 223), justifying the somewhat more intrusive common-law right of inquiry, to a reasonable suspicion, which permits a forcible stop and detention, to, finally, probable cause to arrest.

In this case, as the defendant acknowledges, the initial police approach of the defendant was supported by an objective, credible reason, i.e., the fact that defendant was peering into parked cars along with the fact that he was wearing a heavy coat on a hot July night *(see, People v Giles,* 223 AD2d 39, 40-41, *lv denied* 89 NY2d 864). Thus, their initial approach was justified.

Almost immediately after the commencement of this concededly proper approach, and after the officer said nothing more intrusive than, "Hi, how you doing?" *(see, People v Thomas,* 203 AD2d 96, *lv denied* 83 NY2d 972), the defendant drew his bicycle out from under himself and threw it six feet in the direction of the officer, hard enough to knock him to the ground, and took off on foot.

Although the findings of the suppression court are entitled to deference on appeal *(People v Prochilo,* 41 NY2d 759), we must reject the court's finding that the evidence demonstrated that throwing the bike at the officer was merely the defendant's way of ridding himself of it in order to run away, an action the court found he had the right to take *(People v Holmes,* 81 NY2d 1056). Indeed, if the defendant merely wanted to leave instead of responding to the officer's possible inquiries, the logical way would have been to ride away on his bicycle. The fact that he instead took the time to remove the bicycle from between his legs and throw it at the officer was clearly sufficient to support the inference that it was "more probable than not" *(People v Carrasquillo,* 54 NY2d 248, 254) that the defendant intended to hit the officer with the bicycle, thereby forestalling a chase. Under these circumstances, the information available to the officers immediately rose to a level that provided them with probable cause to arrest the defendant for harassing the officer

(Penal Law § 240.26 [1])[1] or for obstruction of governmental administration (Penal Law § 195.05).[2]

Thus, since, at the inception of the encounter, the police possessed an objective, credible basis for approaching the defendant, and did nothing to exceed the first tier of police intrusion until he, without provocation, threw his bicycle at one of the officers hard enough to knock him down, the defendant's motion to suppress should have been denied. In any event, the retrieval of the gun was also proper since the defendant made a calculated choice in ridding himself of the weapon, demonstrating his intent to abandon it (*People v Boodle*, 47 NY2d 398, *cert denied* 444 US 969; *People v Thomas, supra*). Concur—Ellerin, J. P., Rubin, Williams and Tom, JJ.

---

1. "A person is guilty of harassment in the second degree when, with intent to harass, annoy or alarm another person: 1. He or she strikes, shoves, kicks or otherwise subjects such other person to physical contact, or attempts or threatens to do the same."

2. "A person is guilty of obstructing governmental administration when he intentionally obstructs, impairs or perverts the administration of law or other governmental function or prevents or attempts to prevent a public servant from performing an official function, by means of intimidation, physical force or interference, or by means of any independently unlawful act."