OPINION OF THE COURT
Micki A. Scherer, J.
On January 12 and 13, 1998, a Mapp /Dunaway /Huntley hearing was held before me. At that hearing, the People called Police Officer Brendan Sullivan and Detective Rubin Flowers. The defendant testified on his own behalf and recalled Officer Sullivan as a defense witness. Based upon the credible testimony adduced at the hearing, the court makes the following findings of fact.
FINDINGS OF FACT
On August 19, 1997, Police Officer Brendan Sullivan of the Northern Manhattan Initiative was assigned to investigate narcotics sales at 5 Seaman Avenue in Manhattan. Police Officer Sullivan had been assigned to the Northern Manhattan Initiative for approximately one year prior to this date and had participated in approximately 45 narcotics-related arrests during that time.
The location under observation was a “trespass affidavit building”. The building management, by a signed affidavit, authorized the police to arrest anyone who entered the building without a legitimate reason. Signs were posted inside the building identifying it as a trespass affidavit building. Additionally, the police had received a complaint that drugs were being sold inside the building in apartment 3F.
On the day in question at about 1:00 p.m., Officer Sullivan and Police Officer Tetonic were seated in a parked unmarked van on the corner of Seaman Avenue and Gumming Street. Detective Rubin Flowers, who was also part of the field team, was inside another unmarked vehicle in the vicinity of Dyckman and Broadway. Additional team members were seated in a third vehicle, at an undisclosed location.
At approximately 2:45 p.m., Police Officer Sullivan observed the defendant park his vehicle in front of the building complex. The defendant exited his car, opened the gate to the location using a key, and then entered 5 Seaman Avenue. Police Officer Sullivan observed the defendant return to his car about five minutes later, but the officer admitted that he made no nota *189 tion as to what time the defendant entered the building and that he did not actually see the defendant exit the building. The defendant was “looking around” as he walked to his car and was not carrying anything in his hands.
According to Officer Sullivan, the defendant made a U-turn and drove down Seaman Avenue to Riverside Drive, where he made a right turn. Police Officer Sullivan followed the defendant’s car in his police vehicle. He did not activate his siren or lights. The defendant was halted in traffic at the corner of Henshaw and Riverside Drive. Police Officer Sullivan’s van was immediately behind the defendant’s car and when the defendant stopped, the officer exited his van and approached the defendant on the driver’s side of his car. Police Officer Tetóme approached the passenger side of the vehicle. Both officers had their badges displayed. At about the same time, Detective Flowers pulled his vehicle up next to the defendant’s car.
Officer Sullivan identified himself as a police officer and asked the defendant if he lived at 5 Seaman Avenue. The defendant replied “no”, and stated that he was there to see a friend. The officer asked for the friend’s name and the defendant responded that he did not know. Officer Sullivan then said, “if you were there to buy drugs, let me know now.” The defendant admitted that he was there to purchase drugs, but denied having any drugs on him. The defendant said he had used all the drugs in the apartment. Officer Sullivan asked the defendant to step out of his vehicle and the defendant complied.
At this point, Detective Flowers approached the driver’s side of the defendant’s car and saw on the middle console between the two front seats a clear plastic bag containing what appeared to be cocaine. Detective Flowers reached into the car through the open door and removed the plastic bag from the top of the console. The defendant was then placed under arrest. Detective Flowers then conducted a further search of the defendant’s vehicle, but did not recover any additional contraband. During a search of the defendant’s person, the key to the gate surrounding the apartment complex was recovered.
The defendant’s testimony contained numerous inconsistencies and did not have the “ring of truth”. He admitted that he purchased drugs inside of 5 Seaman Avenue. He stated that he consumed some of the drugs inside the location and remained in the building for approximately 20 minutes. The defendant denied making a U-turn on Seaman Avenue and disputed the route testified to by Police Officer Sullivan. Near the entrance to Riverside Drive, the defendant testified that a white four- *190 door sedan which was traveling very slowly in front of him cut him off and came to a stop. Immediately thereafter, a van pulled up behind the defendant and boxed him in. During cross-examination, the defendant acknowledged that he was stopped in traffic and admitted that he had no reason to believe that the white car in front of him was a police vehicle. He also conceded that the police van did not have its turret lights or siren activated.
The defendant corroborated Police Officer Sullivan’s testimony about questioning the defendant regarding his presence in the building. The defendant asked the officer to clarify which building he was talking about. Officer Sullivan said he had seen the defendant coming out of a building on Seaman Avenue. The defendant said that he was visiting a friend. The officer inquired about his friend’s name, and the defendant told him that he didn’t know. The officer then asked the defendant if he was in the building to buy drugs and the defendant replied, “no”. The defendant stated that at this point he believed that he was free to leave and could have refused to talk to the officer further and driven off. The officer asked the defendant where the drugs were and the defendant responded that he did not have any because he had smoked them all in the apartment. The officer asked the defendant to get out of the car and he complied. The defendant no longer believed that he was free to leave.
According to the defendant, at this point Detective Flowers opened the front passenger door of the defendant’s car and entered the vehicle. Once inside, Detective Flowers searched the glove compartment and the console between the two front seats. He recovered a plastic bag of cocaine from inside the console. This testimony directly contradicted Detective Flowers’ testimony.
After a short recess taken during the defendant’s testimony, the defendant “modified” his earlier testimony in key respects. First, the defendant altered his prior testimony that he believed that he was free to leave during the initial questioning by Police Officer Sullivan. During the defendant’s “post-recess” testimony, he stated, “I thought I was free to leave but I wasn’t. I was being held.” The defendant also changed his earlier testimony that the initial questioning by Police Officer Sullivan occurred when the defendant was still inside his vehicle, and stated that the conversation took place after the defendant was “pulled out” of the vehicle. The defendant also claimed that he did not realize that Police Officer Sullivan was *191 a police officer until after he was outside the vehicle, and that he thought it was a civilian who approached his vehicle and removed him from the car. These sharp reversals in the defendant’s testimony after the recess called into question the defendant’s veracity.
The defendant’s credibility was also impeached on cross-examination. Although the defendant admitted that he purchased $700 worth of cocaine inside 5 Seaman Avenue, some of which he consumed inside the location, he testified that this was one of the first times he used cocaine.
CONCLUSIONS OF LAW
Initially, the court rejects the defendant’s contention that his vehicle was stopped by the police. As noted above, the court credits the testimony of Officer Sullivan and Detective Flowers that the defendant’s car was already stopped in traffic when the officers approached.
Nor is there any basis for concluding that a seizure of the defendant’s car occurred. Police Officer Sullivan gave unrefuted testimony that the car in front of the defendant’s was not a police vehicle, and the defendant conceded that he had no basis for believing otherwise. The defendant confirmed that the police did not activate their turret lights or sirens and did not approach his vehicle with their guns drawn. The defendant also testified that he believed that he was free to leave at the beginning of his encounter with Officer Sullivan. Thus, the credible evidence adduced at the hearing does not support a finding of a seizure in this case. (People v Bora, 83 NY2d 531 [1994].) Since the defendant’s car was not stopped or seized, the reasonable suspicion standard of People v Be Bour (40 NY2d 210 [1976]), cited by the defense is inapplicable.
In order to approach a stationary vehicle which has not been seized, the police need only an “articulable basis for requesting information.” (People v Ocasio, 85 NY2d 982, 985 [1995]; People v Harrison, 57 NY2d 470 [1982]; People v Strong, 234 AD2d 990 [4th Dept 1996]; People v Locano, 209 AD2d 278 [1st Dept 1994].) This articulable basis is supplied “by an objective, credible reason not necessarily indicative of criminality’. (People v Ocasio, supra, at 985; People v Hollman, 79 NY2d 181, 185 [1992]; People v De Bour, supra at 223.) This is the same standard used for evaluating an officer’s conduct in approaching a citizen on the street under the first level of the four-tiered analysis of Be Bour (supra). The officer’s request for information from the occupant of a stationary car, like the request of *192 the citizen on the street, is a minimal intrusion on an individual’s right to privacy; in neither case is there a restraint of the individual nor a significant interruption of the individual’s liberty or freedom of movement. (Kamins, New York Search & Seizure, at 313 [1998].) As a result, the officer’s reason for approaching an individual need not be based on any indicia of criminality and may be predicated on relatively minimal conduct. (People v Ocasio, supra, at 985; People v Giles, 223 AD2d 39 [1st Dept 1996].)
However, notwithstanding the minimal requirement for approaching an individual to request information, this requirement is not satisfied when there are no objective factors to justify the intrusion. There must be more than just “whim, caprice or idle curiosity”. (People v Ocasio, supra, at 985; People v De Bour, supra, at 217; People v Cantor, 36 NY2d 106, 112-113 [1975]; People v Pizzo, 144 AD2d 930 [4th Dept 1988]; People v Carter, 169 Misc 2d 230, 232 [Crim Ct, Kings County 1996].)
In this case, no objective, credible reasons to approach the defendant were present. The sole basis proffered by the People for the police action is that the defendant entered and exited in a short period of time a trespass affidavit building. The People also relied upon the complaint regarding apartment 3F but before they approached the defendant, the police possessed no information that he had visited apartment 3F.
The First Department has noted that “[t]ypically, no single factor will justify the police conduct under scrutiny; rather, it is the peculiar - combination of factors known to the police at the time, and as the circumstances evolve, that will determine the appropriate level of intrusive conduct.” (People v Giles, 223 AD2d, supra, at 43.) In this case, the short period of time that the defendant remained inside the location cannot be considered an “articulable basis” for approaching him, when viewed in conjunction with the other factors known to the police. Any inference drawn from the short duration of the defendant’s visit to the building is negated by the fact that he entered the apartment complex with a key. (Cf., People v Kane, NYLJ, Aug. 1,1996, at 24, col 5 [Sup Ct, NY County].) The defendant’s use of a key to gain access to the location suggested that he was licensed and privileged to enter the location. (People v Crowell, 122 Misc 2d 133 [Oswego County Ct 1983]; People v Alvarez, 86 Misc 2d 654 [Crim Ct, Bronx County 1976].) In this regard, it is important to note that this case is distinguishable from those cases where the police were unaware of how a *193 suspect entered a location (People v Sanders, 172 AD2d 239 [1st Dept 1991]; People v Rodriguez, 159 AD2d 201 [1st Dept 1990]; People v Arviello, 133 AD2d 589 [1st Dept 1987]; People v Carter, 169 Misc 2d 230 [Crim Ct, Kings County 1996], supra), or where they knew that the suspect did not gain entry using a key. (People v Kane, supra.)
Further, the police observed no conduct by the defendant which would suggest that his entry into the building was unlawful. (Cf., People v Carter, supra, at 232.) Nothing in his behavior was unusual or suspicious. (People v Banks, NYLJ, June 27, 1997, at 27, col 3 [Sup Ct, NY County]; cf., People v Reyes, 83 NY2d 945 [1994]; People v De Bour, supra, at 226; People v Vasquez, 217 AD2d 466, 467 [1st Dept 1995]; People v Dawkins, 201 AD2d 336 [1st Dept 1994]; People v Hazel, 194 AD2d 440 [1st Dept 1993].) The defendant entered the building in the middle of the afternoon. (People v Holmes, 81 NY2d 1056 [1993]; cf., People v Hazel, supra; People v Vasquez, supra, at 467.) He was not dressed in an unusual manner. (People v Fellows, 239 AD2d 181 [1st Dept 1997]; People v Giles, 223 AD2d 39, supra.) He was not carrying anything when he exited the apartment complex. (People v Diaz, 80 NY2d 950 [1992]; People v Hollman, 79 NY2d, supra, at 191; People v Moore, 47 NY2d 911 [1979].) There was nothing unusual about the defendant’s vehicle or the manner in which he entered it and drove away. (People v Harrison, 57 NY2d, supra, at 473; People v Asencio, 244 AD2d 225 [1st Dept, Nov. 18, 1997]; People v Dugan, 222 AD2d 770 [3d Dept 1995]; People v Locano, 209 AD2d 278 [1st Dept 1994], supra; People v Harris, 173 Misc 2d 49 [Sup Ct, Monroe County 1997].)
The fact that the location was a trespass affidavit building for which a complaint had been filed does not compel a different result. The police are not justified in approaching an individual merely because he exits an apartment building known for its high incidence of drug activity. (People v Best, Sup Ct, NY County, Aug. 1, 1996, indictment No. 11875/95, slip op, at 6; see also, People v Cornelius, 113 AD2d 666, 670-671 [1st Dept 1986].) In this case, the police had no basis for believing that the defendant entered the building and went to the apartment for which the complaint report had been made. To the contrary, the defendant’s use of a key suggested he had permission and authority to enter.
In sum, the court finds that the police did not have an objective, credible reason for approaching the defendant to ask him *194 what he was doing at 5 Seaman Avenue. On the evidence presented, all that can be said is that the officers had a hunch that the defendant had entered the location to purchase drugs. But a mere hunch or suspicion, without more, is not a predicate for even the most minimal intrusion. (People v Finlayson, 76 AD2d 670, 675 [1980], cert denied 450 US 931.) The fact that the officers’ hunch proved correct is irrelevant for Fourth Amendment purposes. (People v Sobotker, 43 NY2d 559 [1978].)
Since the police were not authorized to approach the defendant’s vehicle, they were not lawfully in a position to observe the contraband on the console inside of his car. Thus, the seizure of cocaine cannot be justified under the plain view doctrine. (Coolidge v New Hampshire, 403 US 443 [1971]; People v Basilicato, 64 NY2d 103, 115 [1984]; People v Spinelli, 35 NY2d 77, 80-81 [1974].) Accordingly, the defendant’s motion to suppress this property is granted.