RHESA HAWKINS BARKSDALE, Circuit Judge,
dissenting:
I agree with the majority that resident Jesus De La 0 has standing to challenge the regulations at issue and that Sun Plaza Apartments, owned by the Housing Authority of the City of El Paso (HACEP), is not a public forum. However, I must dissent from the majority’s holding that those regulations are not reasonable in the light of the purpose of the HACEP properties— providing affordable housing to its low income, primarily elderly residents.
I.
Jesus De La 0, a Sun Plaza Apartments resident, challenges two regulations— Rules D2 and D5 — promulgated by HA-CEP: “Trespass After Warning” (Rule D2) and “Notices and Flyers” (Rule D5). The “Trespass After Warning” regulation limits access to HACEP property to lawful residents, invited guests, and other persons with legitimate business on the property, such as law enforcement and government personnel, utility workers, HACEP contractors, and individuals authorized by HACEP. Housing Authority of the City of El Paso, Tex., Community and Residential Rules for Public Housing and Section 8 New Construction Program, Rule D2 (19 Aug. 1998). Persons who refuse to identify themselves, or who cannot prove authorization to be on the premises, receive a “trespass warning”, requiring them to leave the property or be arrested. Id.
The “Notices and Flyers” regulation limits distribution of literature by residents of HACEP properties to specified hours and prohibits leaving flyers “in plain view on a resident’s door” when a resident does not answer. Id., Rule D5 (as amended 1 Feb. 2000).
The HACEP Director of Housing Management stated that the purpose of Rules D2 and D5 is the protection and safety of tenants, because: most arrests on HACEP *207 properties involve nonresidents; nonresidents sell drugs on HACEP property; and large numbers of undocumented aliens pass through HACEP property. At Sun Plaza Apartments in particular, nonresident walk-through is especially high, and the Immigration and Naturalization Service operates a surveillance station there to combat illegal immigration. Also, because Sun Plaza Apartments is primarily inhabited by elderly residents, many in the complex are fearful of door-to-door solicitation. Furthermore, the Director explained to staff and De La 0 that leaving a flyer at an unanswered door would advertise to thieves that no one is at, or in, that apartment.
II.
As the majority notes, when First Amendment claims are implicated, there are three types of government-owned property under the Supreme Court’s “forum analysis”: the traditional public forum, the designated forum, and the nonpublic forum. See United States v. Kokinda, 497 U.S. 720, 726-27, 110 S.Ct. 3115, 111 L.Ed.2d 571 (1990). And, as the majority holds, Sun Plaza Apartments and other HACEP properties can be nothing other than nonpublic fora. Maj. Op. at 203. Consequently, “the state may reserve the forum for its intended purposes ... as long as the regulation on speech is reasonable and not an effort to suppress expression merely because public officials oppose the speaker’s view”. Perry Educ. Ass’n v. Perry Local Educators’ Ass’n, 460 U.S. 37, 46, 103 S.Ct. 948, 74 L.Ed.2d 794 (1983); see also Cornelius v. NAACP Defense & Educ. Fund, Inc., 473 U.S. 788, 800, 105 S.Ct. 3439, 87 L.Ed.2d 567 (1985); Hobbs v. Hawkins, 968 F.2d 471, 481 (5th Cir.1992).
As the majority holds, Rules D2 and D5 are viewpoint neutral as written and as applied. Maj. Op. at 204. Considering the uncontradicted evidence concerning HA-CEP’s purpose for its properties, I would hold, however, that the regulations are “reasonable in light of the purpose served by the forum”. Hobbs, 968 F.2d at 481.
While the majority acknowledges the nonpublic forum reasonableness test, it ignores the Supreme Court’s explanation of how to evaluate the reasonableness of a regulation. “The Government’s decision to restrict access to a nonpublic forum need only be reasonable; it need not be the most reasonable or the only reasonable limitation.” Cornelius, 473 U.S. at 808, 105 S.Ct. 3439 (emphasis in original and emphasis added). The majority incorrectly concludes that the regulations are not reasonable because there are other approaches that HACEP could have taken.[1]
In contrast to the majority’s method of finding another approach that it deems reasonable, we should accept the uncontested explanation of the HACEP Director of Housing Management that the “Trespass After Warning” regulation (Rule D2) is a reasonable response to the problem of rampant crime in low-income housing developments. See Daniel v. City of Tampa, Florida, 38 F.3d 546, 550 (11th Cir.1994); see also Williams v. Nagel, 162 Ill.2d 542, *208 205 Ill.Dec. 525, 643 N.E.2d 816, 817-18 (Ill.1994), cert. denied, 514 U.S. 1064, 115 S.Ct. 1694, 131 L.Ed.2d 558 (1995) (police-issued “barred notice” authorized complexes to compile “no trespass” lists); People v. Kojac, 176 Misc.2d 187, 671 N.Y.S.2d 949, 950 (N.Y.Sup.Ct.1998) (budding management authorized police to arrest those on the premises without legitimate business); State v. Newell, 93 Ohio App.3d 609, 639 N.E.2d 513, 514 (1994) (off-duty police officers authorized to issue trespass warnings for public housing); City of Dayton v. Williams, 1994 WL 37263 (Ohio Ct.App.1994) (public housing authority policy allowed police to issue trespass notices and arrest those who previously received warnings). Rule D2 allows residents to have guests and visitors on the premises; therefore, De La O may invite political campaigners to his apartment without restriction. The regulation merely provides HACEP with a way to deal with unauthorized individuals on the premises.
In fact, the majority ignores its own forum analysis. In deciding the HACEP properties are nonpublic, the majority correctly concludes that the purpose of the properties is not to provide a meeting place for the exchange of ideas but rather to provide affordable housing. Maj. Op. at 203. Once the majority reaches the reasonableness inquiry, however, it focuses on the importance of communication and access to information, which ignores that the reasonableness of the regulation should be judged by reference to the purpose of the forum.
Furthermore, while no one would disagree with the majority’s most commendable interest in promoting the democratic process, another factor that is integral to the evaluation of the reasonableness of a regulation is whether alternative channels of communication exist. Cornelius, 473 U.S. at 809, 105 S.Ct. 3439 (direct mail and in-person solicitation outside the forum as alternatives); Perry Educ. Ass’n, 460 U.S. at 53, 103 S.Ct. 948 (bulletin boards, meeting facilities, and United States mail available). The HACEP Director of Public Housing’s uncontradicted affidavit explained that all HACEP properties are adjacent to public streets and sidewalks, and that De La O’s complex, Sun Plaza Apartments, “is completely bounded by city streets and sidewalks” open to the public. De La O and others are free to hear the messages of various political candidates outside their complex and decide whether to invite them inside the development in compliance with HACEP’s safety regulation. Also (and obviously), there is no regulation preventing a direct mail campaign to HACEP residents.
Without addressing the readily available alternative channels of communication,[2] the majority chooses to focus on the utility of political canvassing in local elections, ignoring further guidance by the Supreme Court: “The First Amendment does not demand unrestricted access to a nonpublic forum merely because use of that forum may be the most efficient means of delivering the speaker’s message”. Cornelius, 473 U.S. at 809, 105 S.Ct. 3439; United States Postal Serv. v. Council of Greenburgh Civic Ass’ns, 453 U.S. 114, 129, 101 S.Ct. 2676, 69 L.Ed.2d 517 (1981). While door-to-door canvassing may be a more efficient means for candidates to communicate their political views, the regulations, of course, do not prevent them from speak *209 ing to residents outside the HACEP properties on the public streets and sidewalks.
The majority also mistakenly focuses on the distinction between those allowed on the premises and those not. However, the Supreme Court has spoken to this point as well:
Implicit in the concept of the nonpublic forum is the right to make distinctions in access on the basis of subject matter and speaker identity. These distinctions may be impermissible in a public forum but are inherent and inescapable in the process of limiting a nonpublic forum to activities compatible with the intended purpose of the property.
Perry Educ. Ass’n, 460 U.S. at 49, 103 S.Ct. 948. Consequently, it is entirely appropriate for HACEP to make distinctions based on the identity of the speaker: residents, invited guests, and those with official business are allowed to remain, while others, such as political canvassers, uninvited solicitors, illegal aliens, and those intent on criminal activity, are required to leave.
III.
In contrast to the majority, I believe that the approach by the Eleventh Circuit seven years ago in addressing a nearly identical statute is correct. See Daniel, 38 F.3d at 550-51. As in Daniel, I would affirm the summary judgment. The two Rules at issue are reasonable because the purpose of the HACEP properties is to provide affordable housing and not a vehicle for political canvassing. Accordingly, I respectfully dissent.

. The majority suggests that political canvassers could obtain identification. Apart from ignoring that most of the individuals with "legitimate business on the premises” have a specific job that does not involve walking from door-to-door throughout a HACEP complex, the majority also does not address the myriad problems that would arise from this approach. For example, are there limits on the number of ID badges provided? How should HACEP determine who is a legitimate candidate? Would this authorization extend to political organizations and interest groups?

. Instead, the majority quotes from Martin v. City of Struthers, Ohio, 319 U.S. 141, 63 S.Ct. 862, 87 L.Ed. 1313 (1943), a case decided prior to the Supreme Court's "forum analysis” approach and holding unconstitutional a city-wide ban on door-to-door solicitation at residential homes.