OPINION OF THE COURT
Daniel D. Leddy, Jr., J.
On August 17, 1979, the mother of the respondent Kenneth J. filed the instant petition against him alleging the boy to be a person in need of supervision (Family Ct Act, § 712, subd [b]) in that: "He refuses to obey Petitioner’s reasonable commands, threatens Petitioner and other family members with assault, uses marijuana and alcohol, associates with bad companions and has absconded from the home on three occasions in the last year — last time being on August 16, 1979 when Respondent absconded from the home and has not returned. Respondent’s present whereabouts are unknown.” On presentment of the petition the court issued a warrant for the respondent’s arrest on which the boy voluntarily surrendered himself.
Kenneth is a freshman at a parochial high school on Staten Island. He works part time after school at a restaurant and is a very talented basketball player. The petitioner is the boy’s natural mother while her husband adopted the respondent several years ago. The boy’s parents are both employed and own their own home. There is another child of their marriage, a younger daughter.
In an effort to help this family resolve their difficulties the court met separately in chambers with Kenneth and his Law Guardian, and then with the petitioner and her husband. The petitioner was unrepresented by counsel at the time.
Thereupon, the Law Guardian offered an admission to so much of the petition as alleged that the respondent ran away from home on three occasions without just cause. The court ordered an investigation and report from the probation de *417 partment and a full diagnostic study by the Family Court clinic. In the interim, the boy and his parents were referred to the clinic for counseling which both sides conceded was useful and productive. However, the petitioner and her husband insisted from the outset that placement for Kenneth was the only acceptable solution.
It soon became readily apparent to both the court and clinic that the problems in this home transcended any alleged misbehavior on the part of Kenneth. In fact, upon receipt of the clinic reports, the court advised both the petitioner and her husband that they should obtain private counsel since the court was considering the substitution of a neglect petition against them for the PINS petition against their son. (Family Ct Act, §§ 716, 1012, 1013; Matter of Richard C., 43 AD2d 862; Matter of Paul H., 47 AD2d 853; Matter of Richard G., 55 AD2d 939.) The court was very careful to emphasize that it was not, however, at that point, making any judgments as to whether the case was properly a PINS or neglect. With his consent, Kenneth was remanded to Geller House for a more detalied diagnostic work-up. The matter was then adjourned to December 21, 1979. On the adjourned date, the petitioner and her husband appeared by private counsel.
By its very nature, a parental PINS proceeding is highly sensitive, posturing parent versus child in full adversarial framework. Thus, the delicate parental-child relationship, already strained, can be destroyed forever unless both sides conduct themselves with due regard for the feelings and sensitivities of the other. In this case, the emotions of both the parents and child teeter perilously close to the breaking point.
With due regard for the sad realities of this proceeding, the court was desirous of having further discussions in chambers with the respective counsel in an effort to diffuse the heightened tension and reach a solution acceptable to everyone.
However, counsel for the petitioner, on his first appearance, insisted upon "making a record.” He thereupon proceeded to set forth what may be best described as a systematic indictment of the young respondent. During the course of his statement, he referred to many alleged incidents and factors that were neither pleaded nor proved. Typical was a claim that the boy masturbated on at least two occasions in front of his younger sister.
The court interrupted counsel, pointing out how thoroughly destructive these comments, made in open court and in the *418 boy’s presence, were certain to be to the ultimate purposes of this PINS proceeding. Nevertheless, the attorney persisted, maintaining that he was doing his job in representing the parents. Quite predictably, young Kenneth, who had kept his composure to this point in the case, buried his head in his hands and cried. The Geller House report characterized the boy’s sense of self-worth as "very fragile”. His reaction was, therefore, as understandable as it was sad.
The attorney for the petitioner now moves for permission to examine the reports of the court clinic, the probation department, and Geller House. He also seeks to participate fully in any dispositional hearing that is held. The Law Guardian objects to the disclosure of these materials to petitioner’s counsel, questions his right to participate at disposition, and requests that the issue of a possible substitution of petitions be held in abeyance pending exploration of a suitable placement for Kenneth.
It should be noted that, at this point, Kenneth has accepted the fact that he cannot continue to reside with his parents without the risk of substantial turmoil for all. The diagnostic assessment received by the court states that the parents are not capable at this point of empathizing and supporting their son emotionally. Accordingly, the Law Guardian now agrees that placement is indicated. She continues to reserve, however, her right to seek such placement for Kenneth as a neglgected child rather than a PINS.
It is clear, of course, that the "counsel presenting the petition” may participate in a juvenile delinquency dispositional hearing (Family Ct Act, § 743). Enacted in 1976 as part of the Juvenile Justice Reform Act, this section enables the party representing the community interest (Family Ct Act, § 711) to be heard as to appropriate dispositional orders.
Significantly, no mention is made, either in section 743 or elsewhere in the Family Court Act, of any right of the "counsel presenting the petition” to participate in a PINS dispositional hearing. Clearly, it must be presumed that the Legislature intended to do that which it did and intended to omit that which it omitted. The latin maxim expressio unius est exclusio alterius is an established principle of statutory construction. (McKinney’s Cons Laws of NY, Book 1, Statutes, §240; Patrolmen’s Benevolent Assn. v City of New York, 41 NY2d 205.)
Nor can it be said that section 750 of the Family Court Act *419 establishes any right of participation by the "counsel presenting the petition” in a PINS dispositional hearing. Having established the right of the attorney presenting the petition to appear in a delinquency disposition (Family Ct Act, § 743), the Legislature sought in section 750 to assure that such participation would be meaningful. Accordingly, in discussing the availability of probation and diagnostic reports at disposition, subdivision 2 of section 750 provides in part: "If such reports or memoranda are made available to respondent or his law guardian or counsel, they shall also be made available to the counsel presenting the petition”. It is true, of course, that section 750 of the Family Court Act speaks in terms of the dispositional hearing generally without differentiating between PINS and delinquency cases. But there is, after all, little need to reiterate in section 750 that which is already firmly established in section 743. Moreover, it is perfectly logical for the Legislature to limit the petitioner’s right to participate at dispositions to delinquency cases. It is well established that a PINS proceeding, both in nature and scope, is substantially different from a delinquency matter. (Matter of Ellery C., 32 NY2d 588.)
Moreover, the privately retained attorney representing the petitioner herein is not the "counsel presenting the petition” within the meaning of either section 743 or section 750. Subdivision (a) of section 254 of the Family Court Act provides that, when requested by a Family Court, the Corporation Counsel or County Attorney "shall present the case in support of the petition”. Both of these officials, and the District Attorney where appropriate, are representatives of the government and thus charged with a duty that goes well beyond merely protecting the narrow interests of the petitioner as an individual (Brady v Maryland, 373 US 83, 87).
In contrast, a private counsel appearing for the petitioner in a parental PINS case may properly limit the thrust of his representation to his client’s interests without regard to the standards normally applied to public prosecutors under Brady (supra; see, i.e., Besharov, Practice Commentaries, McKinney’s Cons Laws of NY, Book 29A, Family Ct Act, § 254, p 185 et seq.). Thus, in considering the nature of their offices and the scope of their legal interests, it is clear that the Corporation Counsel, County Attorney, and District Attorney are the "counsel presenting the petition” within the meaning of sections 743 and 750 of the Family Court Act. For it is precisely *420 because of the nature of their offices and the scope of their legal interests that they should have access to the dispositional phase and the confidential reports to be used therein.
It should also be noted that the petitioner and her husband retained private counsel after the petition had been presented and after fact finding. In fact, counsel was only retained after the court advised the parents of a possible substitution of petitions. For all of these reasons, it is clear that the parents’ retained attorney is not the "counsel presenting the petition” as that phrase appears in either section 743 or section 750. Nor do the interests of the child require that his parents be present.
 The absence of a respondent’s parent does not, in and of itself, prohibit the Family Court from proceeding, even at the fact-finding stage of a delinquency case, where the parent would ordinarily be standing with the child in his defense. It stands to reason, therefore, that the parent’s attendance is not absoultely required at a PINS disposition especially where that parent has assumed and maintained an adversarial role. In fact, the very nature of a parental PINS case precludes the parent from being, at the same time, both the petitioner and guardian ad litem.
Nor does the possible substitution of a neglect petition pursuant to section 716 of the Family Court Act require that the petitioner be permitted to attend the disposition. It would be a very rare neglect case, indeed, where the respondent parents had a right to be heard in court before presentment of the petition. By its very terms, section 716 permits the court to substitute petitions "[o]n its own motion and at any time in the proceedings”. And yet it is a fact that there are many occasions when a parent may not appear during the course of a proceeding. Such absence may occur for any number of reasons, ranging from a lack of notice to a willful refusal to attend. By its very terms, section 716 permits substitution "at any time” without requiring the attendance of the party to be charged. In fact, the very absence of the potential respondent may be the basis for the substitution. (Matter of Richard C., 43 AD2d 862, supra.)
Having thus established that the petitioner and her counsel may be properly excluded from the dispositional hearing, the court must still decide whether to permit their participation or attendance as a matter of discretion (Family Ct Act, § 741, subd [b]).
*421 It should be emphasized that the court is most sensitive to the rights of parents with respect to their children, particularly their rights to raise them and control their upbringing. This most basic precept of parenthood is firmly rooted in the law. (Meyer v Nebraska, 262 US 390; Pierce v Society of Sisters, 268 US 510.) Here, however, the petitioner mother filed this PINS petition against Kenneth and has insisted from the outset that she wants him out of the home. In fact, she stated in open court that she, herself, would leave the home unless Kenneth were removed. So adamant were the petitioner and her husband about keeping the boy away, that they refused to allow him home even for Christmas Day. Thus, while Kenneth wants to go home, and the court sought to work toward that end, it is the parents who repeatedly foreclose that possibility. This attitude does not necessarily preclude parental interest in the boy’s well-being. But it does clearly evidence the continuing adversarial nature of this case, even into the dispositional phase.
A child’s home is not a place where he lives at the sufferance of his parents. He develops a certain stability there, making friends in the neighborhood and at school. The sense of warmth and security that should attach to the very word "home” cannot be snatched from the child at the whim of his parents. In fact, a parent or parents who harass a child may themselves be removed from the home under the terms of an order of protection. (Family Ct Act, §§ 759, 821, subd 1; § 842.)
This young respondent facing the sad realities of his situation, seeks no such relief. In fact, he reluctantly consents to placement as the only practical solution of the crisis that confronts him.
This court has spent an extrordinary amount of time on this case. It has elicited and obtained extensive psychiatric and psychological data. Reports have been received and evaluated from two psychiatrists and six psychologists. The court is convinced beyond all doubt that the best interests of this youngster require that his parents and their counsel not be present in the courtroom at the dispositional hearing. The report from Geller House, a most respected diagnostic facility, emphasizes that Kenneth’s sense of self-worth is "very fragile”. It is the court’s firm belief that the boy must be insulated from any further attacks on him, by his parents or their counsel, however, well intentioned they may be.
The court will permit the parents, either directly or through *422 counsel, to submit to the probation department any recommendations or information they wish the court to consider on the issue of a suitable placement for Kenneth.