OPINION OF THE COURT
Leon Ruchelsman, J.
Defendant is charged with criminal trespass in the third degree (Penal Law § 140.10 [e]) and criminal possession of a controlled substance in the seventh degree (Penal Law § 220.03). Defendant now moves to suppress drugs found during the arrest and to suppress statements made to the police. A Dunaway/Huntley hearing was held on April 18, 1996. Police Officer Kevin O’Reilly testified for the People. The defense called no witnesses. This court finds the officer’s testimony credible to the extent indicated.
FINDINGS OF FACT
At approximately 8:00 p.m. on January 24, 1996, Police Officer O’Reilly and other officers from the anticrime unit were conducting a "vertical patrol” of the Columbia Street area in Kings County. This patrol consisted of monitoring the New York City Housing Authority apartment buildings in the vicinity of Columbia Street for suspicious or criminal activity. The officers had routinely checked the lobbies, roofs and stairwells of many of the buildings on Columbia Street. 451 Columbia is one of the buildings in this housing complex and the lobby contains conspicuous signs prohibiting trespassing.
*232 As O’Reilly approached the front door he observed the defendant standing in the lobby. The defendant seemed to change his demeanor and began acting nervous as he noticed O’Reilly enter the building. Upon entering, O’Reilly instantly smelled marihuana permeating the entire first floor. O’Reilly then approached defendant and asked him if he lived in the building. Defendant responded in the affirmative. O’Reilly then asked defendant in which apartment he resided. Defendant answered that he rented the first apartment off the stairs on the sixth floor.
O’Reilly requested that defendant escort him to the apartment to verify defendant’s story. Defendant then confessed that he did not rent an apartment in the building, however, he stated he was residing there as someone’s guest.
Whereupon, O’Reilly continued to question defendant as to in which apartment he resided. Defendant could not produce the names of the people with which he claimed he resided nor could he supply the apartment number. Defendant was then placed under arrest. A search incident to the arrest revealed nine glassine envelopes of crack. The defendant was then handcuffed. The defendant stated that the crack was not his and that he was holding it for someone else.
Defendant now asserts that O’Reilly lacked probable cause to effectuate the arrest and that his statements were coerced in violation of Miranda.
OPINION
A. The Right To Question
A police officer is permitted to question any citizen provided that the officer has an articulable reason for the inquiry (People v De Bour, 40 NY2d 210 [1976]; People v Hollman, 79 NY2d 181 [1992]). This is commonly known as a request for information. Such police questioning is permitted even in the absence of any criminal activity, however, there must be some credible rationale for the intrusion (People v De Bour, supra; People v Hopkins, 163 AD2d 416 [2d Dept 1990]). Objective police observations which would prompt permissible questioning include a defendant’s change of behavior or facial expressions upon making eye contact with the officer (People v Reid, NYLJ, July 22, 1994, at 26, col 5 [Sup Ct, NY County]).
In the instant case O’Reilly met the necessary standards to enable him to question defendant. O’Reilly was acting in his capacity as a housing officer and thus as custodian for the entire apartment building to protect all the tenants located therein. Initially, O’Reilly observed defendant act nervous and uneasy as their eyes met (People v Reid, supra).
*233 Moreover, the "articulable” reasons to question defendant were reinforced by the odor of marihuana wafting through the air. There is no requirement that the activity permitting the officer to question defendant arise from one distinct observation or circumstance. It may form from a number of suspicious, even unrelated events.
Indeed, many different police observations and circumstances can give rise for probable cause to arrest (People v McRay, 51 NY2d 594 [1980]; People v Graham, 211 AD2d 55 [1st Dept 1995]). A fortiori argument would compel such an approach for the lesser intrusive police activity of merely requesting information. Therefore, the police had a right to request information.
The continuing questioning by O’Reilly as to defendant’s place of residence did not rise to the next level of police intrusion, to wit, the common-law right of police inquiry. The Court of Appeals has established that common and routine police inquiry remain simple requests for information provided it is clear that the citizen is not the subject of any police investigation and that the police manner is not intimidating, harassing or excessive in any fashion (People v Hoilman, supra).
In the case at bar although O’Reilly repeatedly asked defendant where he lived O’Reilly did not act in an accusatory manner nor did he imply that defendant was the target of any police investigation. Further, O’Reilly did not prod defendant about the marihuana smell nor did he intimate that defendant was in some way involved in criminal activity. Defendant was merely asked whether he lived in the building.
Lastly, O’Reilly’s request to visit defendant’s alleged apartment was nothing more than a request for verification. It was not defendant’s refusal which prompted the arrest. Rather, defendant’s lack of any credible evidence to support his contention that he resided in the building gave O’Reilly the requisite probable cause to arrest.
B. Probable Cause
The police may arrest an individual when there is probable cause that such individual has committed or is committing a crime (People v McRay, supra; People v Esposito, 37 NY2d 156 [1975]; People v Valdez, 78 AD2d 449 [1st Dept 1981]). The requisite police knowledge supporting the probable cause determination may arise from objective circumstances evincing the commission of a crime (People v Bandera, 204 AD2d 340 [2d Dept 1994]; People v Wilmer, 90 AD2d 918 [3d Dept 1982]).
*234 In this case the defendant contends that his arrest was unlawful in that O’Reilly lacked probable cause that defendant was in any way involved in criminal activity. Defendant asserts that his mere presence in the building provided an insufficient basis to arrest (People v Arviello, 133 AD2d 589 [1st Dept 1987]; People v Sanders, 172 AD2d 239 [1st Dept 1991]). This court finds defendant’s argument to be without merit.
Defendant was charged with criminal trespass in the third degree (Penal Law § 140.10), which states:
"A person is guilty of criminal trespass in the third degree when he knowingly enters or remains unlawfully in a building or upon real property * * *
"(e) where the building is used as a public housing project in violation of conspicuously posted rules or regulations governing entry and use thereof’.
This section was added in 1992 in an attempt to curtail the growing number of nonresidents who enter the lobbies of public housing apartment buildings and threaten the safety and security of the residents therein. In promulgating this new law the Legislature explained that current trespass laws were unable to effectively cope with the problem since these buildings were "public property” and hence, beyond the purview of criminal behavior (Legis Mem in Support, Bill Jacket, L 1992, ch 434, at 8; People v Leonard, 62 NY2d 404 [1984]). The sponsor stated:
"Under current law, residents of public housing projects have no protection against would be trespassers.
"The laws involving trespass to privately owned residential buildings should apply as well to public housing projects.” (Bill Jacket, L 1992, ch 434, at 10.)
The new law, therefore, specifically includes housing projects within the parameters of illegal criminal trespass. Provided the statute is complied with and "No Trespassing” signs are clearly displayed, the new law operates in all public housing developments (cf., People v Brunson, NYLJ, Aug. 14, 1995, at 32, col 1 [Crim Ct, Queens County]). Thus, simply being in the lobby of a housing project can subject someone to a criminal trespass violation. No longer can nonresidents circumvent the criminal trespass law by asserting they were roaming in places "open to the public”. The Legislature has determined that for purposes of criminal trespass law, public housing projects shall be afforded the same protection as private apartment buildings.
*235 Applying these principles to the present case, the instant O’Reilly determined that defendant was not a resident and lacked authority to be on the premises, probable cause arose. The officer did not need to ascertain other objective acts of criminality. Defendant’s unauthorized presence in the building was sufficient to provide the sole information that a crime had been committed.
Defendant’s reliance on Sanders (supra) is misplaced. Sanders correctly held that where the police do not possess the requisite probable cause that a crime has been committed they may not issue an arrest. In Sanders, the police determined that the defendant was not a resident of the housing project and arrested him for criminal trespass. The court held the police action conclusory and hence unlawful since the police never determined satisfactorily that the defendant was indeed not authorized to be in the building.
In the present case the police questioned defendant for quite a few moments and afforded defendant many opportunities to establish his lawful presence in the building, either as a resident or through some other grant of authority. The defendant failed to establish his rightful presence there and tried to mislead the officer to believe otherwise. As previously discussed, this gave rise to legitimate conclusions that defendant did not have permission to be in the building (People v Babarcich, 166 AD2d 655 [2d Dept 1990]).
Therefore, O’Reilly had probable cause to arrest and defendant’s motion is hereby denied.
C. Statements
Defendant’s final argument is that his statement should be suppressed on the ground he was not given Miranda warnings. Miranda warnings must be administered whenever there is custodial interrogation (Miranda v Arizona, 384 US 436 [1966]). However, spontaneous statements made by a defendant without any undue police coercion are admissible (People v Rivers, 56 NY2d 476 [1982]).
There is no evidence that O’Reilly induced or coerced defendant to utter the statement prior to the Miranda warnings. Therefore, the statement was spontaneous and will be admissible.