OPINION OF THE COURT
Abraham Clott, J.
*429 The common issue in these cases is whether a person may be prosecuted for trespass as an A misdemeanor (Penal Law § 140.15) when he is found inside the lobby beyond the vestibule of an apartment building operated by the New York City Housing Authority whether or not the door to the lobby is locked.[1] This court holds that the lobby of a residential apartment building separated from the street by a vestibule may be a “dwelling” as defined by Penal Law § 140.00 (3) whether or not it is locked and that a complaint charging a defendant with violating Penal Law § 140.15 is sufficient even if it does not allege that the lobby was locked so long as there is reasonable cause to believe that the defendant had no legal right to be in the building. The complaint in each of these cases is sufficient under this standard.
Each defendant in these cases is charged with violating Penal Law § 140.15 and each has moved for dismissal of the complaint as legally insufficient primarily on the ground that the facts alleged in the complaint would not establish that the defendant was inside a “dwelling.” An information is sufficient so long as it contains nonhearsay allegations providing reasonable cause to believe that the People can prove every element of the crime charged. The court must assume that the factual allegations are true and must consider all reasonable inferences that may be drawn from the allegations. (CPL 100.40, 100.15; People v Alejandro, 70 NY2d 133 [1987]; People v Henderson, 92 NY2d 677 [1999]; People v Casey, 95 NY2d 354 [2000].)
The complaint in each of these cases alleges that a police officer saw the defendant “inside the lobby of the dwelling beyond the vestibule, an apartment building where people reside,” but none alleges that the lobby was locked. A person is guilty of the A misdemeanor trespass provision when he “knowingly enters or remains unlawfully in a dwelling.” (Penal Law § 140.15.) A “dwelling” is defined as a building, such as an apartment building, occupied by persons lodging overnight. (Id. § 140.00 [3].) A person enters or remains unlawfully in a dwelling when he is “not licensed or privileged to do so.” (Id. § 140.00 [5].)
Both the Appellate Division and Appellate Term have held that common areas of a multi-unit residential apartment building are part of the “dwelling” within the scope of the definition applicable to article 140 of the Penal Law so long as these areas are understood commonly as being closed to the public. (See, *430 e.g., People v Quinones, 2002 NY Slip Op 50091[U] [App Term, 1st Dept 2002] [complaint sufficient when it alleged that the lobby was separated from the street by a locked door and buzzer system]; People v Torres, 162 AD2d 385 [1st Dept 1990] [evidence sufficient to sustain a trial conviction with respect to the hallway of a brownstone with a locked front door]; People v Rodriguez, 159 AD2d 201 [1st Dept 1990] [evidence sufficient to sustain trial conviction when incident took place in a stairwell separated from the lobby by a door when the lobby itself was separated from the street by doors]; but cf. People v Ennis, 30 NY2d 535 [1972], affg 37 AD2d 573 [2d Dept 1971] [proof insufficient at trial to show that an open basement of an apartment building was part of the dwelling]; People v Maisonet, 304 AD2d 674 [2d Dept 2003] [proof insufficient at trial to show that hallway of an apartment building was part of the dwelling].)
This court has not found any controlling authority considering whether a complaint gives reasonable cause to believe that a defendant was inside a “dwelling” when he is found in a lobby beyond the vestibule of an apartment building without regard to whether either the vestibule or lobby is locked. This court notes, however, that the Appellate Division did hold in Rodriguez (supra) that evidence that doors separated both a stairwell from the lobby and the lobby from the street was sufficient to prove beyond a reasonable doubt that the stairwell was part of the dwelling without indicating whether either door was locked (or even whether a “no trespass” sign was posted). Accordingly, this court concludes that no controlling authority mandates that an area of a common dwelling be locked to be considered part of the “dwelling.” Rather, the test must be whether in light of common experience it is understood that the area is not open to the general public.
This court concludes that an unlocked lobby of a residential apartment building beyond an unlocked vestibule is not necessarily open to the general public. The residents of an apartment building, including apartment buildings run by the New York City Housing Authority (NYCHA), are entitled to expect that common areas of their homes are open only to people with a legitimate reason for entering. Such people include (but are not necessarily limited to) residents, guests of residents, deliverymen, and friends and relatives of residents who have been told by residents that they are welcome to visit without a specific invitation. But the lobby of an apartment building is not a place open to anybody who is there for no legitimate reason at all. *431 This rule seems especially appropriate in the case of large public housing units which may be difficult to maintain. Certainly the reasonable expectations of the residents of NYCHA buildings to privacy and security as protected by laws against criminal trespass cannot depend on whether the building’s security system happens to be in good working order on any particular day. The residents of middle-class and luxury apartment buildings assume that they will not have to navigate through a gang of people “hanging out” or sleeping in their lobbies to reach the doors to their apartments. The residents of NYCHA buildings are entitled to no less.[2]
This court is aware that some higher court decisions have construed definitions of “dwelling” other than that set out in article 140 as not including an unlocked lobby. In these instances, however, other statutory provisions regarding a “home” or “dwelling” were construed narrowly to protect interests very different from those protected by article 140 — the right of residents to be free of burglars and trespassers. For example, the Court of Appeals has held that the definition of “home” under the gun laws does not include a lobby of a public shelter. (See People v Powell, 54 NY2d 524 [1981].) The definition of “home” under the gun laws, however, should be more narrow than that of “dwelling” under article 140 because the purpose of the definition under the gun laws at issue in Powell is to assure substantial criminal penalties for possession of a gun in a public place; a lesser penalty is provided in the very limited exception case of a person who possesses an unlicensed gun within the strict confines of his home. The area in which a resident is entitled to be free of trespassers and burglars is larger than the area in which he is subject to a lesser penalty for possessing an unlicensed gun.
Some have argued that a lock, “no trespass” sign, or some “physical barrier” is necessary to give the general public fair notice that it is unwelcome in the lobby of an apartment building. (See, e.g., People v Outlar, 177 Misc 2d 620, 623-624 [Crim Ct, NY County 1998].) This court disagrees. Fair notice that a lobby is private is conveyed specifically by the physical separation of the lobby from the street by a vestibule, and by the exclusive residential character of an apartment building. A lobby *432 through which one must walk to reach a store or a buzzer system would not be private. But a lobby set off from the street with no access to anything but private apartments is not a public place to which all are invited without discrimination. Accordingly, a jury could find, after examining all the evidence offered by the People about the configuration of a building, that an unlocked lobby is part of a “dwelling.” Especially at the pleading stage, where the only issue is whether the People have established reasonable cause to believe that an offense has been committed, this court believes that these complaints are sufficient.
The specific contentions of each defendant are considered below:
1. Michael Scott (Docket No. 2004NY092997)
The complaint alleges that a police officer “observed the defendant inside the lobby of the dwelling beyond the vestibule, an apartment building where people reside and that said location is beyond a posted sign saying: ‘No Trespassing.’ ” The complaint also alleges that the defendant stated, “I don’t live here but my girlfriend lives in 3B,” but that the officer “determined that the defendant was not an invited guest” because he “went to apartment 3B and the tenant said that ‘nobody had been there all day.’ ” The defendant argues, partly in reliance on authority that this court rejects, that the complaint does not establish that the lobby was part of the “dwelling” because there is no allegation that the lobby was locked or otherwise closed to the public. For the reasons stated above, this court concludes that the complaint is sufficient. Although defense counsel has not challenged the complaint for failure to give reasonable cause to believe that the defendant had no legal right to be in the building, this court has considered the issue and concludes that the officer’s observations are sufficient in this respect.
2. Dwayne Thomas (Docket No. 2004NY093097)
The complaint alleges that a police officer “observed the defendant inside the lobby of the dwelling beyond the vestibule, an apartment where people reside and that said location is beyond a posted sign which read, ‘No Trespassing.’ ” The complaint also alleges that the defendant stated, “I don’t live here,” “I was just going to knock on someone’s door, but no one told me to come here to do so,” and “I wanted to hang out for a while.” The defense argues that the complaint is insufficient in four respects.
*433 The defendant’s first argument is that NYCHA buildings are public in nature and that the A misdemeanor trespass provision does not apply at all to public housing. The defense maintains that because NYCHA buildings are public in nature, trespass in these buildings may be prosecuted only under the B misdemeanor trespass provision applying specifically to public housing buildings (Penal Law § 140.10 [e]). This court disagrees. For the reasons stated above, trespass in any part of a NYCHA building that is a “dwelling” may be prosecuted as an A misdemeanor. Trespass in other parts of NYCHA buildings or property may be prosecuted as a B misdemeanor. The distinction between NYCHA and ordinary apartment buildings is not that the public has greater access to NYCHA buildings. Rather, the distinction is that a person may be prosecuted for the B misdemeanor for being anywhere on NYCHA property at all (such as on the lawn), whereas a person can be prosecuted for the A misdemeanor only for being inside a “dwelling.” This court cannot agree that the general public has the same right to lie around the lobby of a NYCHA building as on the Great Lawn of Central Park.
The defendant’s second argument is that the complaint does not allege sufficient facts to establish that the lobby was within the “dwelling.” For the reasons stated above, this court rejects that argument. The defendant’s third argument is that the “no trespass” sign was not sufficient to convey personal notice to the defendant that he was not welcome inside the building. For the reasons stated above, this court concludes that the physical structure of the building was sufficient to bar the general public. The defendant’s fourth argument is that the defendant’s statements do not give any indication that he had no right to be inside the building. This court disagrees and concludes that the defendant’s failure to identify any particular person he was visiting or reason for being there does establish reasonable cause to believe he had no right to be inside the lobby. The general public does not have the right to enter apartment buildings to knock on the doors of strangers or to “hang out.”
3. Jordan Herbert (Docket No. 2005NY007949)
The complaint alleges that a police officer “observed the defendant inside the lobby of the dwelling beyond the vestibule, an apartment building where people reside and that said location is beyond a posted sign which read, ‘No Trespassing.’ ” The complaint also alleges that the defendant stated that “he was not a tenant and was in the building looking for a *434 prostitute” and that “he knows that hookers frequent the building looking for drugs, so he was looking for a prostitute.” The defendant’s argument that the complaint does not allege sufficiently that he was in an area closed to the public is rejected for the reasons stated above.
4. Ramona Rivera (Docket No. 2005NY105009)
The complaint alleges that a police officer “observed the defendant inside the lobby of the dwelling beyond the vestibule, an apartment building where people reside and that said location is beyond a posted sign which read, ‘No Trespassing.’ ” The complaint also alleges that the defendant said, “I do not live here” and “I am not visiting anyone here.” The defendant’s notice of motion includes a motion to dismiss for facial insufficiency, but the body of the defense submission does not include any argument in support for that motion. For the reasons stated above, this court concludes that the complaint is sufficient.
Conclusion
This court finds that the information in each of these cases is sufficient and, in each case, denies the motion to dismiss.

. For the reasons stated herein, this court chooses not to follow the contrary rulings of other lower courts on this issue (see e.g., People v Outlar, 177 Misc 2d 620 [Crim Ct, NY County 1998]), including my own (People v Colon, Crim Ct, NY County, Mar. 16, 2004, Docket No. 2003NY087440).