[906 NYS2d 703]

THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, v ERIC SITON, Defendant.

Criminal Court of the City of New York, Kings County, July 29, 2010

**APPEARANCES OF COUNSEL**

*Charles J. Hynes, District Attorney* (*Michael Ferrari* of counsel), for plaintiff. *Legal Aid Society* (*Seymour James* and *Raoul Zaltsberg* of counsel), for defendant.

**OPINION OF THE COURT**

JOHN H. WILSON, J.

Defendant is charged with one count each of criminal trespass in the second degree (Penal Law § 140.15), a class A misdemeanor, criminal trespass in the third degree (Penal Law § 140.10),[1] a class B misdemeanor, and trespass (Penal Law § 140.05), a violation.

According to the Criminal Court complaint, on April 20, 2010, at approximately 11:38 P.M., Police Officer Deniston Williams observed the defendant "inside the hallway of the 7th Floor" of 24 Monument Walk, Brooklyn, New York, which is "a New York City Housing Authority building."

Defendant was arraigned in this matter on April 21, 2010. The supporting deposition signed by Officer Williams on April 21, 2010 and filed with the court, indicates that there was a posted sign at the location which reads "Loitering and Trespassing in Lobby, Roof, Hallway and Stairs is not permitted. Violators are subject to arrest and prosecution by the Police Department."[2] The supporting deposition also states that though defendant claimed to be visiting a friend named "Jazz" in apartment 7F, "there is no one living (in Apt. 7F) by the name (Jazz)."

On its own motion, the court sought dismissal of the count charging Penal Law § 140.15 since the location where defendant was arrested is not a dwelling. The People opposed the dismissal of this charge. The court asked both sides to brief the issue.

The court has now reviewed the People's affirmation in opposition dated May 10, 2010, as well as defendant's response dated June 16, 2010.

For the reasons stated below, the charge of criminal trespass in the second degree under Penal Law § 140.15 is dismissed.

---

1. The People have actually charged the defendant with a violation of subdivision (a) of Penal Law § 140.10, however, their allegations are clearly meant to fall under subdivision (e). Rather than fault the People for their clerical error, given that the appropriate allegations are made in the body of the complaint, this court will construe the People as having charged defendant under subdivision (e) of Penal Law § 140.10.

2. Though the supporting deposition indicates that the "location is beyond a conspicuously posted sign" which reads as quoted above, there is no indication as to where exactly the sign is posted, allowing defendant to have actually observed said sign. Since this topic involves an element of the People's proof (i.e., whether or not defendant knowingly entered or remained in the premises), this issue will be left to the trial court. (See People v Mackey, 16 Misc 3d 398, 400 [Crim Ct, Kings County 2007] ["evidence presented at trial does not indicate whether there were any signs prohibiting trespass posted, conspicuously or otherwise"].)

With the filing of the supporting deposition at arraignment, the rest of the Criminal Court complaint with its remaining charges is deemed to be an information as of April 21, 2010.

CPL 100.15 provides that every accusatory instrument must contain two elements: (1) an accusatory portion designating the offense charged, and (2) a factual portion containing evidentiary facts which support or tend to support the charges stated in the accusatory portion of the instrument. These facts must provide reasonable cause to believe that the defendant has committed the crime alleged in the accusatory portion of the accusatory instrument. (*See People v Dumas*, 68 NY2d 729 [1986].)

Further, under CPL 100.40, a misdemeanor information is facially sufficient if the nonhearsay facts stated in said information establish each and every element of the offense charged, as well as the defendant's commission of said crime. If both these factors are present, then the information states a prima facie case, and is sufficient. (*See People v Alejandro*, 70 NY2d 133 [1987].)

On a motion to dismiss, this court's review is limited to whether or not the People's allegations as stated in the Criminal Court complaint are facially sufficient. The facts alleged need only establish the existence of a prima facie case, even if those facts would not be legally sufficient to prove guilt beyond a reasonable doubt. (*See People v Jennings*, 69 NY2d 103, 115 [1986].)

Applying these principles to the instant matter, the factual allegations contained in the misdemeanor information before this court do not support the charge of criminal trespass in the second degree under Penal Law § 140.15.

Under Penal Law § 140.15, "[a] person is guilty of criminal trespass in the second degree when he knowingly enters or remains unlawfully in a dwelling." A "dwelling" is defined at Penal Law § 140.00 (3) as "a building which is usually occupied by a person lodging therein at night." The violation of Penal Law § 140.15 is a class A misdemeanor, punishable by up to one year of incarceration.

Penal Law § 140.10 (e) states that "[a] person is guilty of criminal trespass in the third degree when he knowingly enters or remains unlawfully in a building or upon real property . . . (e) where the building is used as a *public housing project* in violation of conspicuously posted rules or regulations governing entry and use thereof" (emphasis added). The violation of Penal

Law § 140.10 is a class B misdemeanor, punishable by up to 90 days of incarceration.

The People's position is that a public housing project is a dwelling, and as such, defendant may be charged under both Penal Law § 140.15 as well as Penal Law § 140.10 (e) for being in the 7th floor hallway of a premises owned and operated by the Housing Authority. Penal Law § 140.15 has been in effect since 1965, and was last amended in 1969. However, in 1992 the Legislature added Penal Law § 140.10 (e), a class B misdemeanor, which specifically addresses trespass in a Housing Authority facility.

The reason for the enactment of Penal Law § 140.10 (e) was discussed in detail in *People v Carter* (169 Misc 2d 230 [Crim Ct, NY County 1996]), only four years after this statute was added. There, defendant argued that his mere presence in the lobby of a Housing Authority building "provided an insufficient basis to arrest" since the lobby was a public area in a public facility. (169 Misc 2d at 234.)

Looking to the statement of the Legislature attached to the bill, the *Carter* court noted that prior to 1992, the Legislature "explained that current trespass laws were unable to effectively cope with the problem (of nonresidents who enter the lobbies of public housing apartment buildings) since these buildings were 'public property' and hence, beyond the purview of criminal behavior." (169 Misc 2d at 234, citing Legis Mem in Support, Bill Jacket, L 1992, ch 434, at 8.) The Court goes on to cite further evidence of the Legislature's belief that the then-current laws were inadequate to address this situation; "Under current law, residents of public housing projects have no protection against would be trespassers." (169 Misc 2d at 234, citing Bill Jacket, L 1992, ch 434, at 10.)

Thus, the *Carter* court concluded, "simply being in the lobby of a housing project can subject someone to a criminal trespass violation. No longer can nonresidents circumvent the criminal trespass law by asserting they were roaming in places 'open to the public.' " (169 Misc 2d at 234.)

Clearly, then, the Legislature of the State of New York, the duly elected body responsible for promulgating the laws of this state, believed the 1965 statute, Penal Law § 140.15, did not cover trespass in a facility owned and operated by the Housing Authority when it enacted Penal Law § 140.10 (e) in 1992.

Since the *Carter* decision, there have been a series of decisions discussing what application Penal Law § 140.15 has to

public housing property. Yet, the majority of these cases never discuss the legislative history which brought about enactment of Penal Law § 140.10 (e). Rather, these cases have turned on the efforts made by the public housing authority to exclude the public from the facility.

In *People v Quinones* (2002 NY Slip Op 50091[U], *1 [App Term, 1st Dept 2002]), the court held that defendant's presence in the lobby of a public housing apartment building was a violation of Penal Law § 140.15, where the location was "equipped with a locked entrance door and 'buzzer system' . . . These allegations were sufficient, for pleading purposes, to establish that the lobby area was part of the dwelling and was not open to the general public" (citations omitted). *People v Scott* (8 Misc 3d 428, 429 [Crim Ct, NY County 2005]) unequivocally found that Penal Law § 140.15 applies to the common areas of a New York City Housing Authority "residential apartment building," regardless of whether or not there are locks on the front door. That court equated "multi-unit residential apartment buildings," which are privately owned, to public housing buildings. (8 Misc 3d at 429.)[3]

In ignoring the legislative intent, cases such as *Quinones* and *Scott* veer into irrelevant issues. It is indisputable that the conduct which the Legislature intended to criminalize when it enacted Penal Law § 140.10 (e) is defendant's presence in a Housing Authority building.

When interpreting a law, a court must always look to the intention of the Legislature. It is a basic principle of statutory construction that statutes are to be read in pari materia, that is, "statutes which relate to the same person or thing, or to the same class of persons or things are . . . to be construed together." (*See* McKinney's Cons Laws of NY, Book 1, Statutes § 221 [a], Comment, at 374, citing *People ex rel. Doscher v Sisson*, 222 NY 387, 393 [1918].) "In other words, every statute is to be considered with reference to the general system of laws of which it forms a part." (*See* Statutes § 221 [b], Comment, at 377, citing *Matter of Littleton*, 129 Misc 845, 848 [Sur Ct, West-

---

**3.** In *People v Spann* (8 Misc 3d 654, 656 [Crim Ct, NY County 2005]) the court noted that "an apartment located inside (a public housing building) is commonly understood to be a dwelling . . . there is no question that an individual apartment unit is closed to the public." Thus, the only issue presented here, and in the cases discussed here, are the "public" areas of a public housing building (i.e., the lobby, hallway, stairs) and not the actual apartments of the residents.

chester County 1927].) Thus, a court must give a "uniformity of application and construction" to all statutes. (*See Matthews v Matthews*, 240 NY 28, 35 [1925].)

This rule of construction applies "even though the statutes to be construed together were enacted at different times." (*See* Statutes § 221 [b], Comment, at 379, citing *Macrum v Board of Supervisors of County of Suffolk*, 141 Misc 358, 361 [Sup Ct, Suffolk County 1931], *affd* 235 App Div 370 [2d Dept 1932], *revd on other grounds* 261 NY 193 [1933].)

> "As a general rule, where the legislation dealing with a particular subject consists of a system of related general provisions indicative of a settled policy, a new enactment of a fragmentary nature is to be taken as intended to fit into the existing laws on the same subject unless a different purpose is clearly shown." (*See* Statutes § 223, Comment, at 387, citing *Matter of Rademaker*, 166 Misc 201, 207-208 [Sur Ct, Kings County 1938] [citations omitted].)

"The legislative intent is to be ascertained from the words and language used, and the statutory language is generally construed according to its natural and most obvious sense, without resorting to an artificial or forced construction." (Statutes § 94, at 188.) Thus, "it must be presumed that the legislature intended to do that which it did and intended to omit that which it omitted. The Latin maxim *expressio unius est exclusio alterius* is an established principle of statutory construction." (*Matter of Kenneth J.*, 102 Misc 2d 415, 418 [Fam Ct, Richmond County 1980].)

Further, "[i]n the interpretation of statutes, the great principle which is to control is the intention of the Legislature in passing the same, which intention is to be ascertained from the cause or necessity of making the statute." (*Matter of Shaul*, 199 Misc 1000, 1002 [Sur Ct, Jefferson County 1951]; *see also Matter of Izzo v Kirby*, 56 Misc 2d 131, 135 [Sup Ct, Suffolk County 1968] ["Courts must look to the history and object of the enactment and 'read the statute in the light of the state of facts which were found by the Legislature, and which prompted the enactment' "], citing *Saint Nicholas Cathedral of Russian Orthodox Church in N. Am. v Kedroff*, 302 NY 1, 31, [1950], *revd on other grounds* 344 US 94 [1952].)

In language which is most relevant to our analysis here, the Court of Appeals in *Saint Nicholas* also stated as follows:

> "[t]he courts have always recognized that it is the

province of the Legislature to make the underlying findings of fact which give meaning and substance to its ultimate directives. The courts have traditionally refused to consider the wisdom or technical validity of such findings of fact, if there be some reasonable basis upon which they may rest." (*Id.* at 31.)

The only case found by this court which takes into account the express intent of the Legislature is *People v Spencerel* (NYLJ, Aug. 11, 2008, at 21, col 1). There the court found that Penal Law § 140.15 did not apply to a defendant found on the second floor of a New York City Housing Authority building. As in *Carter*, that court reviewed the legislative history of the 1992 enactment of Penal Law § 140.10 (e), and found that "the Legislature was of the view that Penal Law 140.15, which prohibits trespassing in dwellings, did not apply to public housing." (NYLJ, Aug. 11, 2008, at 21, col 1.)

Acknowledging that "it would seem self-evident that a residential building, whether private or public, is a dwelling within the meaning of Penal Law § 140.15" (*id.*), the very heart of the issue is stated clearly by the *Spencerel* court:

"It may well be, as the People argue, that the Legislature acted from an erroneous assumption. However, it is not for the court to declare that the Legislature acted from a mistaken perception or to speculate as to whether some different motive drove the legislative action. Rather, the court is required to apply the law as written. As written, trespass in a public housing building is punishable as a class B misdemeanor under Penal Law § 140.10(e) and not as a class A misdemeanor pursuant to Penal Law § 140.15." (NYLJ, Aug. 11, 2008, at 21, col 1 [citations omitted].)

Thus, the *Spencerel* court follows the same time-honored rules of statutory construction which are ignored by the *Quinones* and *Scott* courts.

The *Spencerel* court relies upon *People v Moore* (5 NY3d 725, 727 [2005]) as further support for its position. There the Court of Appeals held that a complaint charging criminal trespass in the third degree was facially insufficient where it failed to allege elements added to the charge by the Legislature. The *Spencerel* court noted that without the language added to Penal Law § 140.10 (a) in 1987, that statute would be identical to Penal Law § 140.05, and "would be committed by identical conduct." (NYLJ, Aug. 11, 2008, at 21, col 1.)

As in the case before this court,

> "both third-degree and second-degree criminal trespass would be committed by identical conduct if effect is not given to the limiting language of Penal Law § 140.10(e). Such an approach would ignore completely the legislative amendments of 1992 while enabling the prosecution, at its unfettered discretion, to select a higher or lesser degree of charge based on identical conduct." (NYLJ, Aug. 11, 2008, at 21, col 1 [citations omitted].)

Thus, as in *Spencerel*, this court finds that "the Legislature manifestly intended that trespass in public housing be prosecuted pursuant to Penal Law § 140.10 (e)," and not Penal Law § 140.15. (*Id.*)

> "Indeed, it was apparently the Legislature's belief that, until adoption of [Penal Law § 140.10 (e)], such conduct would not be criminal. Therefore, when it enacted Penal Law § 140.10(e), the Legislature, in its view, was not providing an alternative method for prosecuting trespassers in public housing but creating a new and exclusive crime." (NYLJ, Aug. 11, 2008, at 21, col 1.)

If we view the various forms of trespass proscribed by the various sections of article 140 of the Penal Law in pari materia, it is clear that the Legislature intended for different sections to address different conduct. Penal Law § 140.15 is intended for trespass in a dwelling. The Legislature has expressed its belief that the hallways, stairs and lobby of public housing are not part of the dwelling (i.e., the residents' apartments). Therefore, the Legislature enacted Penal Law § 140.10 (e) to address this issue. This court has no power or authority to provide a different interpretation of the law.

Thus, based upon the clearly expressed intention of the Legislature of the State of New York, Penal Law § 140.15 must be dismissed from the instant docket as not applicable to trespass in a public housing facility.

All other arguments advanced by the People and defendant have been reviewed and rejected by this court as being without merit.