*866 OPINION OF THE COURT
Abraham Clott, J.
The defendant is charged with criminal trespass in the second degree (Penal Law § 140.15). This opinion addresses the issue whether trespass in a public housing apartment building can only be prosecuted as a class B misdemeanor because the legislative history of the class B misdemeanor provision, Penal Law § 140.10, demonstrates that the Legislature intended to limit liability for trespass in public housing projects to the class B misdemeanor. This court rejects the conclusion of several recent opinions[1] holding that the class A misdemeanor provision does not apply to public housing apartment buildings and rejects the analysis by these courts of the legislative history of the trespass statutes and of its relevance to the class A misdemeanor trespass provision.
The criminal court complaint alleges that the defendant was standing on a staircase inside a New York City Housing Authority (NYCHA) apartment building beyond a posted “no trespassing” sign. The defendant stated “I don’t know anyone in the building” and could not identify any resident who had invited him in. The defendant moved orally to dismiss the charge on the ground that trespass in a NYCHA apartment building can only be prosecuted as criminal trespass in the third degree (Penal Law § 140.10 [e]).[2] The motion is denied because an apartment building within a public housing project is a “dwelling” and a person who enters such a building without permission is subject to prosecution for second degree trespass, a class A misdemeanor (Penal Law § 140.15).
The Legislature has established three degrees of nonfelonious trespass. Simple trespass, Penal Law § 140.05, a violation, is made out when a person “knowingly enters or remains unlawfully in or upon premises.” “Premises” is defined to include any “building” or “real property” (Penal Law § 140.00 [1]). Trespass in the third degree, a class B misdemeanor, is made out when a person commits the offense of simple trespass (as relevant here, by entering a building) and one of seven aggravating factors (set out in Penal Law § 140.10 [a]-[g]) is present. As relevant to this *867 discussion, one such aggravating factor elevating a trespass violation to a class B misdemeanor trespass in the third degree is “where the building is used as a public housing project in violation of conspicuously posted rules or regulations governing entry and use thereof’ (Penal Law § 140.10 [e]). Trespass in the second degree, a class A misdemeanor, is made out when the person commits both the trespass violation (building) and third degree trespass (public housing building), but the “building” is a “dwelling” (Penal Law § 140.15;[3] see generally People v Moore, 5 NY3d 725, 726-727 [2005] [holding that one of the conditions enumerated in subdivisions (a)-(g) of Penal Law § 140.10 must be present to elevate the offense from a violation to a class B misdemeanor]).
The potential application of the three trespass provisions with respect to public housing property is thus clear on the face of the statutes: unlawful entry into any building that is part of a public housing project is both a violation and a class B misdemeanor while unlawful entry into any building that is part of a public housing project and is also used as a “dwelling” is a class A misdemeanor. If a large complex of apartment buildings includes, for example, a community house or some other structure in which people do not reside, unlawful entry into that structure is a violation if the building is owned by a private landlord but a class B misdemeanor if the building is part of a public housing project. Unlawful entry into any apartment building used as a dwelling is a class A misdemeanor whether the landlord be Trump, the Helmsleys, or NYCHA.[4] Several judges have rejected the plain meaning of the statutes and have held that unlawful entry into a “dwelling” is not a class A misdemeanor when the “dwelling” is part of a public housing project. These judges have reasoned that by enacting the class B misdemeanor provision elevating simple unlawful entry into a “building” from a violation to a class B misdemeanor when the building is part of a public housing project the Legislature some *868 how intended to downgrade liability from a class A to a class B misdemeanor for unlawful entry into a “dwelling” when the dwelling happens to be part of a public housing project rather than a rental apartment building owned by a private landlord, a condominium, or a co-op. (E.g. People v Bazan, 30 Misc 3d 1237[A], 2011 NY Slip Op 50379[U] [2011]; People v James, 28 Misc 3d 345 [2010].) Nobody has suggested any possible public policy advanced by such an obviously absurd result or suggested any legitimate reason why the Legislature may have intended to achieve such an absurd result. Nobody has articulated any reason why the Legislature would choose to punish trespass in public housing projects less severely than trespass in other dwellings. Rather, the judges have reasoned that they are bound by what the Legislature has done and have concluded that the legislative history gives no choice but to adopt this reading of the statutes. (E.g. People v Spencerel, NYLJ, Aug. 11, 2008, at 21, col 1 [Grim Ct, NY County, July 23, 2008] [“(I)t is not for the court to declare that the Legislature acted from a mistaken perception . . . Rather, the court is required to apply the law as written”].)
The minimal legislative history of the trespass statutes does not, however, require the conclusion that the Legislature intended to bar prosecution for trespass in the second degree when the dwelling is part of a public housing project. The New York rules of statutory construction provide “that if the legislative intent is clear no attempt at construction should or will be made, and that rules of construction for a statute are to be invoked only where its language leaves its purpose and intent uncertain” (McKinney’s Cons Laws of NY, Book 1, Statutes § 76, Comment). With respect to legislative history, the rules further provide specifically that
“[w]here the legislative language is clear, there is no occasion for examination into extrinsic evidence to discover legislative intent; only where legislative language is ambiguous is the consideration of extrinsic evidence warranted. In other words, where no ambiguity or doubt appears in a statute, the court should confine its attention to the statute and not allow extrinsic circumstances to introduce a difficulty in the interpretation of plain language.” (Id. § 120, Comment.)
So the Court of Appeals has held that “[r]esort to legislative history will be countenanced only where the language is ambiguous or where a literal construction would lead to absurd or un *869 reasonable consequences that are contrary to the purpose of the enactment” (Matter of Auerbach v Board of Educ. of City School Dist. of City of N.Y., 86 NY2d 198, 204 [1995] [citation omitted]).[5] 6 The reasons for this rule are obvious: almost all legislative history is the statement of the view of a lone legislator or, at best, of a committee acting by majority vote; no matter what motivated an individual legislator or even a committee to propose legislation, the only real evidence of any intent attributable to the Legislature as a whole is the text of the statute it enacts (see generally Zedner v United States, 547 US 489, 510-511 [2006, Scalia, J., concurring]).
The legislative history of the class B misdemeanor trespass in the third degree provision relied upon by the Bazan, James and other courts is, in fact, remarkably unenlightening. The memorandum in support of the bill states the following as its “Justification”:
“Residents of public housing projects should be afforded the same right to safety as residents of private housing. Presently, there is a loop hole in the law that does not allow housing police to issue trespassing summonses to persons on the premises of a public housing project if they do not reside in the building and are not visiting a resident of the building. The reason for this is because the building is ‘public property.’
“Many residents and children of public housing projects are unprotected when entering or leaving their apartments as strangers are roaming the halls.
*870 “Just as it is illegal to remain on the premises of a building being used as an elementary school when a person is requested to leave because they do not attend that school, it should be illegal to remain on the premises of a public housing project when a person does not live there and is not visiting another resident.” (Bill Jacket, L 1992, ch 434, at 8.)
A letter to the Governor’s Counsel by the Senate Sponsor of the Bill (then-Senator, now Judge, Christopher Mega) states:
“The bill rectifies an anomaly in the law by providing that a person will be guilty of trespassing in the third degree when he or she trespasses in a public housing project in violation of conspicuously posted rules o[r] regulations or of a personally communicated request to leave from a housing police officer.
“Under current law, residents of public housing projects have no protection against would be trespassers.
“The laws involving trespass to privately owned residential buildings should apply as well to public housing projects.” (Bill Jacket, L 1992, ch 434, at 10.)
And a letter to the Governor’s Counsel by the Assembly Sponsor, Joseph Lentol, makes the same point.[6]
This legislative history establishes, if anything, that the Legislature intended for those who trespass in public housing projects to be prosecuted to the full extent of the law governing trespass in private dwellings. So understood, the legislative history is fully consistent with the plain meaning of the statute as set forth above. The legislative history may therefore explain why ordinary trespass into a building that is not a dwelling was elevated from a violation to a class B misdemeanor. Or the state *871 ments may reflect an opinion that a person may not be prosecuted for trespass in a dwelling under the law as it existed before enactment of the class B misdemeanor. The basis for that opinion, however, is not stated and is unknown. That opinion, if it was held by the person or persons who drafted the class B misdemeanor trespass provision, was clearly wrong: no authority (other than that relying on the very legislative history quoted above) holds or suggests that a person found trespassing in a public housing apartment building cannot be prosecuted for trespass in the second degree. The best that can be said in favor of the reading of the statute favored by Bazan and James is that sometime in 1992 or earlier some person or persons unknown made a legal error, concluded that trespass in public housing projects could not be prosecuted under then-current law, and persuaded members of the Legislature to address the error by enacting the class B misdemeanor provision. An anonymous and erroneous reading of the law in 1992 does not bind us now to perpetuating the mistake. No good reason exists for not enforcing the trespass statutes in accordance with their plain language.
Accordingly, defendant’s motion to dismiss is denied.

. E.g. People v Bazan, 30 Misc 3d 1237(A), 2011 NY Slip.Op 50379(U) (2011); People v James, 28 Misc 3d 345 (2010).

. An oral motion to dismiss must be denied unless the accusatory instrument is insufficient on its face and “the court is satisfied that on the basis of the available facts or evidence it would be impossible to draw and file an accusatory instrument which is sufficient. . . .” (CPL 140.45.)

. A “dwelling” is defined as a “building which is usually occupied by a person lodging therein at night” (Penal Law § 140.00 [3]). All areas of a residential apartment building — including a NYCHA building — past the vestibule are part of the dwelling (People v Scott, 8 Misc 3d 428 [2005]).

. Some have suggested that applying the class A misdemeanor provision (dwelling) to trespass in a public housing apartment building violates the rule of Moore because there would be no distinction between the crimes defined by the class A and class B misdemeanor provisions. (E.g. People v Siton, 29 Misc 3d 438, 445 [2010].) This view is erroneous because as explained above a structure may be a “building” within a public housing project but not a “dwelling.”

. The Court of Appeals has, at times, suggested a less stringent reading of the rule barring consideration of legislative intent. For example, Chief Judge Kaye wrote for the Court “that it is appropriate to examine the legislative history even though the language ... is clear” (Riley v County of Broome, 95 NY2d 455, 463 [2000], quoting McKinney’s Cons Laws of NY, Book 1, Statutes § 124) and that “[w]hen aid to construction of the meaning of words, as used in the statute, is available, there certainly can be no ‘rule of law’ which forbids its use, however clear the words may appear on ‘superficial examination’ ” (id., quoting New York State Bankers Assn. v Albright, 38 NY2d 430, 437 [1975]). Notably, however, the rules of statutory construction in section 124 merely note in language not quoted by the Court that “it has been held that legislative history is not to be ignored” (emphasis added); this observation is not stated as a rule. Perhaps more importantly, in no case known to this court has the Court of Appeals relied on legislative history to adopt a construction of a statute plainly inconsistent with its only possible plain meaning and inconsistent with any rational view of public policy. When the statutory language is plain, legislative history is relevant only if literal application of the plain language would lead to an absurd result (Auerbach v Board of Educ., 86 NY2d at 204).

. That letter states:
“By including public housing projects under that section of the law, a loop hole in the law that does not allow housing police to issue trespassing summonses to persons on the premises of [a] public housing project who do not reside in the building and are not visiting a resident of the building is closed. Just as it is illegal to remain on the premises of a building being used as an elementary school when a person is requested to leave because they do not attend that school, it should be illegal to remain on the premises of a public housing project when a person does not live there and is not visiting another resident.” (Bill Jacket, L 1992, ch 434, at 11.)